Rebecca **MAGANUCO**, on behalf of herself and numerous others similarly situated, Plaintiff–Appellant,

v.

**LEYDEN COMMUNITY HIGH SCHOOL DISTRICT 212,** Defendant–Appellee.

No. 90–2277.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1991.

Decided Aug. 6, 1991.

Barbara J. Hillman, Stephen A. Yokich (argued), Cornfield & Feldman, Chicago, Ill., for plaintiff-appellant.

Michael J. Duggan, J. Todd Faulkner (argued), Klein, Thorpe & Jenkins, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, FLAUM and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

Rebecca Maganuco, formerly a schoolteacher, brings this Pregnancy Discrimination Act challenge to the leave policies of her past employer, the Leyden township high school district. In a prior opinion, this Court affirmed a portion of a district court decision granting Leyden summary judgment on Maganuco's disparate treatment claim that the leave policy discriminated on the basis of pregnancy. However, we remanded for trial on the question of whether the leave policies disparately impacted these women. On remand, the district court found in favor of the school district. We affirm.

## I. FACTS AND PRIOR PROCEEDINGS

In 1981, named plaintiff Rebecca Maganuco, a schoolteacher employed by defendant Leyden Community High School Dis-

trict ("Leyden"), became pregnant. In June 1981, she wrote to Leyden's superintendent, Dr. David Byrne, requesting that she be allowed to use the sick leave she had accumulated during her employment at Leyden for a period of disability caused by her pregnancy. She predicted that this period would begin in late September 1981. Maganuco informed Byrne that following this period of disability, she would begin a maternity leave that would last for the remainder of the 1981–82 school year. Byrne responded that the collective bargaining agreement between Leyden and the union that represented Maganuco barred teachers from taking maternity leave immediately following a period of disability for which they used sick leave. "In short," Byrne wrote Maganuco, "you must make a choice between using sick leave or taking a maternity leave."

The collective bargaining agreement between Leyden and the teacher's union provides for three types of leave. The first is sick leave, which Leyden teachers accumulate at the rate of 17 days per year. Teachers who take sick leave are paid at their usual salaries for the days they are absent. The major restriction on the use of sick leave is that teachers may not follow a period of sick leave with any other form of leave unless they continue to be disabled after they have exhausted their sick days. Thus, a Leyden teacher like Maganuco could not use the 40 sick days she had accumulated to take a paid leave of absence for her last month of pregnancy and 10 days of post-delivery recuperation, *and then* begin a period of maternity leave to spend her child's first year at home rather than returning to teaching.

Maternity leave is a second type of leave offered at Leyden. Maternity leave may be taken for up to 1½ semesters (though teachers have frequently been allowed to take more), and is unpaid. It may be taken at any time during the school year and may begin during pregnancy, before childbirth. The third type of leave at Leyden is general unpaid leave. There are two categories of general unpaid leave, the first of which is taken a semester or year at a time and which teachers generally use to pursue a personal interest, most commonly further education. This form of unpaid leave must begin at the end of a school year and is granted at Leyden's discretion, subject only to a provision in the collective bargaining agreement that half the requests must be granted. Leyden has rarely turned down a teacher's request for general unpaid leave. The second form of unpaid leave is used by teachers who remain disabled, but have exhausted their sick days and are unable to borrow additional days from a "bank" of days maintained by the school district to which teachers may contribute unused days.

After obtaining a right-to-sue letter from the EEOC, in March 1983 Maganuco brought this action against Leyden in the district court. She alleges that Leyden's leave policy has the effect of barring women teachers from using their accumulated sick leave to cover pregnancy-related disabilities and therefore violates Title VII, 42 U.S.C. §§ 2000e–2000e–17, as amended by the Pregnancy Discrimination Act ("PDA"), Pub.L. No. 95–555 § 1, 92 Stat. 2076 (codified at 42 U.S.C. § 2000e(k)). Maganuco, who sued on behalf of a class of Leyden schoolteachers, claimed that the school district's leave policy discriminated against women by preventing them from using their sick leave for pregnancy-related disability, leading them to forego the use of accumulated sick days for what was likely to be among the longest periods of disability that they would experience during their careers. As Maganuco pointed out, when a teacher retires, Leyden compensates teachers for unused sick days at a rate lower than the teacher's per diem pay. This, she argues, means that Leyden's policy leads teachers to accumulate days that are worth less at retirement than if used during the teacher's career at Leyden.

Maganuco alleged that Leyden's leave policy both treated and impacted women differently from men in violation of Title VII. After some early proceedings in the district court, which are summarized in our prior opinion, *Scherr v. Woodland School Comm. Consol. Dist. No. 50*, 867 F.2d 974, 976–77 (7th Cir.1988) ("*Scherr*"), Leyden

filed a motion for summary judgment. The district court judge to whom the case was then assigned granted summary judgment to Leyden on both Maganuco's disparate impact and disparate treatment theories. Maganuco appealed this decision, and we affirmed in part and reversed in part, holding that the grant of summary judgment as to Maganuco's disparate treatment claim was correct, but that Maganuco had established that disputed issues of material fact existed as to whether Leyden's policy had a disparate impact upon pregnant teachers. *Scherr*, 867 F.2d at 984.

On remand the case was reassigned to another district court judge, who referred it to a magistrate. The magistrate held an evidentiary hearing and issued a report and recommendation. The magistrate concluded that the proper focus of analysis under the PDA was whether Leyden's policies satisfied the actual needs of the school district's pregnant employees. Report and Recommendation at 7 (citing *California Fed. Sav. & Loan Ass'n v. Guerra*, 758 F.2d 390, 396 (9th Cir.1985), *aff'd*, 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987)). Applying this standard, the magistrate first noted that she agreed with Maganuco that, given the greater cash value of sick days taken during a teaching career compared to their value at retirement, most women, given the opportunity, would use sick days before they took unpaid leave. However, she concluded that she "could not find either that Leyden's sick leave policy does not afford a pregnant teacher sufficient time off to recover from her pregnancy disability or that Leyden's maternity leave policy does not afford a pregnant teacher sufficient time off to combine both parenthood and real 'employment opportunity.'" Report and Recommendation at 8 (quoting *Guerra*, 758 F.2d at 396). This conclusion was based on the magistrate's reasoning that Leyden's policies did not burden the ability of employees to use sick leave and did not have a disparate impact on pregnant women because it met the needs that arose out of their medical condition. In a brief opinion the district court adopted the magistrate's report and recommendation as its own.

## II.  DISPARATE IMPACT

Maganuco appeals the district court's decision that Leyden's leave policies do not have a disparate impact on women on account of pregnancy. She contends that pregnancy is among the most common disabilities faced by women teachers, and that Leyden's policy effectively prevents pregnant teachers from using accumulated sick days for their period of pregnancy-related disability. This policy, Maganuco contends, has a disparate impact on women on account of pregnancy in violation of Title VII.

As we recognized in *Scherr*, the PDA "finds force through the substantive sections" of Title VII. 867 F.2d at 978. Title VII "proscribe[s] 'not only overt discrimination but also practices that are fair in form but discriminatory in practice.'" *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 2119, 104 L.Ed.2d 733 (1989) (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971)). Under the latter legal theory, "a facially neutral employment practice may be deemed violative of Title VII without evidence of the employer's subjective intent to discriminate...." *Wards Cove*, 109 S.Ct. at 2119; *see also International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854, 52 L.Ed.2d 396 (1977) (distinguishing between disparate impact and disparate treatment theories).

■ To establish a *prima facie* case of employment discrimination, disparate-impact plaintiffs generally rely on statistical evidence showing the disproportionate effect of the challenged employment practice on members of the protected class. *See, e.g., New York City Transit Authority v. Beazer*, 440 U.S. 568, 584, 99 S.Ct. 1355, 1365, 59 L.Ed.2d 587 (1979) ("A prima facie violation of [Title VII] may be established by statistical evidence showing that an employment practice has the effect of denying the members of one race equal access to employment opportunities."); *Wards Cove*, 109 S.Ct. at 2121 (statistical comparison "generally forms the proper basis for the

initial inquiry in a disparate impact case."). In this case, Maganuco claims that Leyden's leave policy leads women who choose to have children to accumulate a greater number of sick days than men or than women who choose to forego childbirth. A statistical basis for this argument might have been established by showing that women who have been disabled due to pregnancy have accumulated sick days at a greater rate per year of service than their male coworkers or than women who have not experienced pregnancy-related disability. In the years since this case was filed, however, Maganuco has never offered this evidence, focusing instead on the absolute number of sick days women have accumulated over their teaching careers. This evidence fails to establish that Leyden's leave policies have a disproportionate and adverse impact on women teachers who experience pregnancy-related disability, leaving the record on this case devoid of the kind of "gross statistical disparities" that "alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination." *Hazelwood School Dist. v. United States*, 433 U.S. 299, 307–08, 97 S.Ct. 2736, 2741, 53 L.Ed.2d 768 (1977).

■■■ Maganuco also argues that Leyden's leave policies violate Title VII by forcing women to choose between using their accumulated sick days for pregnancy-related disability and taking maternity leave subsequent to childbirth. We are unable to accept this argument because it extends the scope of the PDA beyond the intent of the legislators who drafted it. The PDA provides that "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work...." 42 U.S.C. § 2000e(k). In the words of the PDA's drafters, the Act "require[s] that women disabled due to pregnancy, childbirth or other related medical conditions be provided the same benefits as those provided other disabled workers." H.Rep. No. 948, 95th Cong., 2d Sess. at 5 (1978), *reprinted,* 1978 U.S.Code Cong. & Admin. News 4749, 4753. Describing Congress's goal in pass-

ing the PDA, the Supreme Court wrote in *California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987), that "Congress had before it extensive evidence of discrimination *against* pregnancy, particularly in disability and health insurance programs...." *Id.* at 286, 107 S.Ct. at 692.

The plain meaning of the PDA, its legislative history, and the Supreme Court's subsequent discussions of the origins and purposes of the Act all suggest that its scope is limited to policies which impact or treat medical conditions relating to pregnancy and childbirth less favorably than other disabilities. Maganuco's challenge to Leyden's leave policy, however, is not that it discriminates against pregnancy and related disabilities relative to other medical conditions. Indeed, Leyden allows teachers to use their paid sick days for any medical condition causing disability, whether or not pregnancy-related. If a teacher is disabled for more days than she has accumulated in her store of sick days or can borrow from the bank of days the school maintains, it allows the teacher to take an unpaid leave for the duration of the disability, regardless of whether the disability is caused by pregnancy, childbirth, or some other medical problem.

Rather, what Maganuco is, in truth, challenging is the combination of Leyden's sick leave and maternity policies, the effect of which is to prevent those women who choose to remain at home after the end of their pregnancy-related disability from using their sick days to cover their periods of disability. Teachers who choose not to take maternity leave, and decide instead to return to teaching as soon as their period of pregnancy-related disability ends, are unaffected by the policy that Maganuco challenges. The impact of the leave policy that Maganuco contests, then, is dependent not on the biological fact that pregnancy and childbirth cause some period of disability, but on a Leyden schoolteacher's choice to forego returning to work in favor of spending time at home with her newborn child. However, this choice is not the inevitable consequence of a medical condition

related to pregnancy, and leave policies that may influence the decision to remain at home after the period of pregnancy-related disability has ended fall outside the scope of the PDA.

■ This is not to say that a policy which does not provide adequate leave to accommodate the period of disability associated with pregnancy might not be vulnerable under a disparate-impact theory of liability under Title VII. Indeed, courts have struck down such policies. *See, e.g., Abraham v. Graphic Arts Int'l Union,* 660 F.2d 811, 819 (D.C.Cir.1981); *Miller–Wohl Co. v. Comm'r of Labor & Indus.,* 515 F.Supp. 1264, 1267 (D.Mont.1981), *vacated on other grounds,* 685 F.2d 1088 (9th Cir.1982). In this case, however, the combination of accumulated sick days, together with the possibility of additional unpaid leave if a teacher were to exhaust her store of accumulated sick days, is clearly sufficient to meet the needs of pregnant Leyden schoolteachers. Moreover, the school goes beyond the requirements of the PDA by allowing a special type of leave, maternity leave, to satisfy the desire many women teachers at Leyden have to stay at home after they give birth to spend more time with their infants.[1] The PDA prohibits employers from forcing pregnant women who remain able to work to take leaves unless the employer can show that the leave is necessary because the condition of pregnancy is incompatible with continued employment. *See, e.g., Carney v. Martin Luther Home,* 824 F.2d 643, 649 (8th Cir. 1987); *cf. Levin v. Delta Air Lines,* 730 F.2d 994, 998 (5th Cir.1984). It does not prevent employers from conditioning the availability of an employment benefit on an employee's decision to return to work after the end of the medical disability that pregnancy causes.

### III. CONCLUSION

For the foregoing reason, the decision of the district court in favor of defendant Leyden Community High School District No. 212 is

AFFIRMED.

---

**1.** Maternity leave is more favorable to Leyden teachers than general unpaid leave in two respects. First, maternity leave can begin at any time during the school year, while general unpaid leave (excluding the unpaid leave that Leyden allows disabled teachers who have run out of sick days) must be taken at the start of the school year. Second, the district is not required to grant more than one-half of the requests for general unpaid leave it receives, but is required to grant all requests for maternity leave. The establishment of a maternity leave policy more favorable to recent mothers than other leave policies are to other employees does not itself violate Title VII. *See, Harness v. Hartz Mountain Corp.,* 877 F.2d 1307, 1311 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 728, 107 L.Ed.2d 747 (1990). The failure to allow fathers to avail themselves of a more generous child-raising leave available to women employees might. *Schafer v. Board of Pub. Educ.,* 903 F.2d 243 (3d Cir.1990).