EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

ELGIN TEACHERS ASSOCIATION, Defendant.

No. 86 C 6775.

United States District Court, N.D. Illinois, E.D.

Dec. 13, 1991.

Carol Cresswell Moschandreas, Jason S. Hegy, John P. Rowe, E.E.O.C., Chicago, Ill., for plaintiff.

Gerald C. Peterson, Winston & Strawn, Chicago, Ill., David P. Kula, Kathleen Roche Hirshman, Scariano, Kula, Ellch & Himes, Chtd., Chicago Heights, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Plaintiff, Equal Employment Opportunity Commission ("EEOC"), brings this action against Elgin Teachers Association ("ETA") for violation of Title VII, 42 U.S.C. §§ 2000e et seq.[1] The complaint alleges that ETA violated Section 703 of Title VII by entering into and maintaining collective bargaining agreements which treat employees who are disabled as a result of pregnancy less favorably than those who are disabled for other reasons.

On March 9, 1989, EEOC filed a motion for partial summary judgment on the issue of liability pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. Thereafter, on April 10, 1989, ETA filed a cross-motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This Court referred the motions to Magistrate Judge Gottschall for a Report and Recommendation. Subsequently, the case was reassigned to Magistrate Judge Rosemond. On February 28, 1991, Magistrate Judge Rosemond issued his report, recommending that this Court grant EEOC's motion for summary judgment on the issue of liability and deny ETA's cross-motion for summary judgment. Subsequently, both EEOC and ETA filed objections to the Magistrate Judge's report.

This Court has reviewed EEOC's objections, ETA's response, ETA's objections and EEOC's response. In addition, this Court has considered ETA's supplemental authority of *Maganuco v. Leyden Community High School Dist. 212*, 939 F.2d 440 (7th Cir.1991), and *EEOC v. City Colleges of Chicago*, 944 F.2d 339 (7th Cir.1991), as well as EEOC's responses to these citations. For the reasons set forth in this opinion, we adopt in part and reject in part the Magistrate Judge's Report and Recommendation.[2]

## I. DISCUSSION

### A. *EEOC's Objections*

In its underlying motion for partial summary judgment EEOC argued that sum-

---

1. Initially, the complaint also named Board of Education, District U–46 as a defendant. Judge Shadur dismissed the Board as a party defendant pursuant to Federal Rule 12(b)(1).

2. In our view, the Seventh Circuit's recent decision in *Maganuco* requires us to reject the Magistrate Judge's recommendation granting EEOC's motion for summary judgment. This is no reflection on the capable job done by the Magistrate Judge as he did not have the benefit of the Seventh Circuit's opinion in *Maganuco* when he issued his report.

mary judgment should be granted in its favor on any of three alternate grounds. According to EEOC, the leave provisions contained in the collective bargaining agreements at issue constitute either *per se* discrimination, disparate treatment, and/or disparate impact, all in violation of the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k). Before addressing the central issue of disparate treatment, this Court will briefly discuss EEOC's arguments regarding *per se* discrimination and disparate impact, as well as the Magistrate Judge's disposition of the claims.

### 1. The *Per Se* Discrimination Claim

■ The Magistrate Judge concluded that this circuit recognizes only two viable theories of employment discrimination: disparate impact and disparate treatment. (Report and Recommendation, p. 12). EEOC disagrees and contends that distinctions based on pregnancy alone may amount to a *per se* violation of Title VII. (Plaintiff's Objections, p. 3). We agree with EEOC that a facially discriminatory policy may constitute *per se* or explicit sex discrimination. Such a finding would in turn obligate the defendant to meet a higher evidentiary burden.

In reaching this conclusion, we are persuaded by EEOC's citation to *Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of America, UAW v. Johnson Controls, Inc.*, — U.S. —, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991). In *Johnson Controls*, the Court held that the company's fetal-protection policy was explicit sex discrimination forbidden under Title VII unless the company could establish that sex was a "bona fide occupational qualification." 111 S.Ct. at 1204. The Court's opinion implies that explicit facial discrimination constitutes a direct form of disparate treatment which requires the employer to establish a bona fide occupational qualification, as opposed to an indirect the-

ory of disparate treatment which requires the employer to articulate a legitimate, nondiscriminatory reason for its action. Therefore, to the extent that the Magistrate Judge believed that a facially discriminatory policy could not be challenged under a disparate treatment theory, we sustain EEOC's objection.

■ However, even though we agree that express sexual discrimination may be attacked under a disparate treatment theory, this reasoning does not entitle EEOC to relief under its *per se* theory. In fact, we agree with ETA that the challenged leave provisions in the collective bargaining agreements are not facially discriminatory. *See, e.g., Maganuco*, 939 F.2d at 445. Accordingly, EEOC is precluded from advancing its theory of *per se* discrimination at trial.

### 2. The Disparate Impact Claim

As an additional ground of attack, EEOC objects to the Magistrate Judge's rejection of its disparate impact claim. EEOC argues that if the Court finds that neither pregnant nor non-pregnant teachers could combine paid disability leave with an unpaid leave of absence, the challenged leave provisions disparately impact pregnant teachers. In *Maganuco*, the Seventh Circuit specifically addressed and unequivocally rejected this argument. 939 F.2d at 444–45. In fact, EEOC properly concedes that *Maganuco* is dispositive of its disparate impact claim. (Plaintiff's Response to Defendant's Citation of Supplemental Authority, p. 4). Consistent with *Maganuco*, EEOC is foreclosed from pursuing its disparate impact theory at trial.[3]

### 3. The Disparate Treatment Claim

■ EEOC does not quarrel with the Magistrate Judge's finding that pregnant teachers were not allowed to combine a paid disability leave with an unpaid general leave of absence. However, the Magis-

---

**3.** We briefly comment on the Magistrate Judge's disposition of EEOC's disparate impact claim. The Magistrate Judge concluded that no discussion of disparate impact was warranted because the challenged leave provisions were not facial-

ly neutral. (Report and Recommendation, p. 28). For the record, we adopt the Magistrate Judge's result, but not his reasoning, on this point.

trate Judge did not expressly decide whether a non-pregnant teacher could combine paid disability leave with a general unpaid leave of absence. Therefore, EEOC asks this Court to explicitly find that non-pregnant teachers were allowed to combine a paid disability leave with an unpaid general leave of absence. In response, ETA argues that whether certain teachers could or could not combine such leaves is an issue of fact which precludes summary judgment.

We disagree with the Magistrate Judge's finding that there is no genuine issue of fact as to whether pregnant teachers had the option of combining a paid disability leave with a general unpaid leave of absence. (Report and Recommendation, p. 23). In a factually analogous situation, this circuit in *Scherr v. Woodland School Comm. Consolidated Dist. No. 50*, 867 F.2d 974 (7th Cir.1988), reversed the district court's grant of summary judgment for the Woodland school district on plaintiff's disparate treatment claim holding that a genuine issue of material fact existed as to whether non-pregnant teachers could combine paid sick leave with a general unpaid sick leave. 867 F.2d at 982.

The contract in *Scherr* contained a "no combination" policy for maternity leave. 867 F.2d at 981. The parties disputed whether the collective bargaining agreement prohibited the combination of leaves by non-pregnant teachers. Moreover, Woodland's policy manual was silent on whether non-pregnant teachers were so restricted. Therefore, the court held that whether Woodland had a no combination policy applicable to non-pregnant teachers was a genuine issue of material fact precluding summary judgment. 867 F.2d at 981–82.

In the instant case, the Magistrate Judge found that "there is no evidence that any teacher ever took a disability leave for *any* reason, including pregnancy, and followed that with a general leave of absence." (Report and Recommendation, p. 16).[4] Further, EEOC has not conclusively shown that non-pregnant teachers could combine such leaves, while pregnant teachers could not. In our view, whether pregnant teachers or non-pregnant teachers could combine leaves under the collective bargaining agreements is a genuine issue of material fact. *See Scherr*, 867 F.2d at 981–82. Accordingly, we deny EEOC's motion for summary judgment based on disparate treatment. Similarly, the Court denies ETA's cross-motion for summary judgment.

### B. *ETA's Objections*

ETA objects to the Magistrate Judge's report on several grounds. We address each objection in turn. Thereafter, we address the arguments raised by ETA in its second citation of supplemental authority.

First, ETA argues that the Magistrate Judge erroneously concluded that the maternity leave of absence ("MLOA") provisions in the collective bargaining agreements were facially discriminatory. The Magistrate Judge concluded that the MLOA provisions were facially discriminatory because a pregnant teacher who chose maternity leave did not receive the same benefits as a pregnant teacher or a non-pregnant teacher placed on disability leave. Specifically, the Magistrate Judge reasoned that ETA's MLOA provision required a teacher on MLOA to return to work before receiving disability pay. In addition, the amount of disability pay that a pregnant teacher could receive on MLOA was limited to six weeks, regardless of the amount of sick days that a teacher had accumulated. On the other hand, teachers on disability

---

**4.** In our view, it is unclear whether teachers, pregnant or not, could combine leaves. The deposition testimony of Robert Jensen ("Jensen"), ETA's Executive Director, and Dr. Marvin Feinberg ("Feinberg"), Assistant Superintendent for Personnel for School District U–46, reveals that it is unclear whether pregnant teachers or non-pregnant teachers could combine a paid leave of absence with a general unpaid leave of absence. In his deposition, Jensen testified that a pregnant teacher had the right to combine a pregnancy disability leave with a general leave of absence. Similarly, Feinberg testified that a pregnant teacher could combine a paid disability leave with a general unpaid leave of absence. However, no pregnant teacher was specifically identified and Feinberg vacillated on this point during his testimony.

leave (pregnant and non-pregnant) did not have to return to work to receive benefits, nor were the amount of sick days limited. (Report and Recommendation, p. 13). In light of this situation, the Magistrate Judge concluded that the collective bargaining agreements were discriminatory "[b]ecause the MLOA provisions placed special requirements and imposed a special limitation on pregnant teachers...." (Report and Recommendation, pp. 13–14).

We disagree with the Magistrate Judge. In *Maganuco*, this circuit recognized that leave policies which require a pregnant teacher to choose between paid sick leave and unpaid maternity leave do not violate the PDA. 939 F.2d at 444–45. ETA's leave policy is similar to the policy in *Maganuco*, with the exception that ETA pays a teacher on MLOA for six weeks of disability upon her return to work.

■ Equally telling, the Seventh Circuit stated in *Maganuco* that the PDA "does not prevent employers from conditioning the availability of an employment benefit on an employee's decision to return to work after the end of a medical disability that pregnancy causes." 939 F.2d at 445. In our view, *Maganuco* implicitly recognizes that requiring a pregnant woman to choose between paid disability leave, which is available to all teachers, and unpaid maternity leave, is not facially discriminatory. Therefore, we disagree with the Magistrate Judge's conclusion that the leave provisions in the collective bargaining agreements were facially discriminatory.

■ As its second line of attack, ETA argues that the Magistrate Judge erroneously entered summary judgment in favor of EEOC because EEOC failed to establish its disparate treatment claim. According to ETA, it was EEOC's burden to prove that ETA allowed non-pregnant teachers to combine paid disability leave with unpaid general leave while prohibiting pregnant

teachers from doing the same. As stated more fully at pages 4–5 of this opinion, whether a teacher could combine disability leave with a general leave of absence creates a factual issue inappropriately resolved on a motion for summary judgment. In our view, the Magistrate Judge inappropriately entered summary judgment in favor of EEOC. We sustain ETA's objection on this point.

■ In its third objection, ETA objects to the Magistrate Judge's denial of its motion for summary judgment on two alternate grounds. Initially, ETA asserts that EEOC has failed to establish a *prima facie* case of disparate treatment. We do not agree. Under this indirect theory, EEOC "may offer evidence of a combination of circumstances from which we may infer discriminatory intent." *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1250 (7th Cir.1990). We find that EEOC has submitted sufficient circumstantial proof of discrimination based on pregnancy to withstand summary judgment.

Alternatively, ETA argues that even if EEOC established its *prima facie* case, ETA articulated legitimate nondiscriminatory reasons for its actions which EEOC failed to show were pretextual.[5] However, ETA was less than clear in stating its reasons. Apparently, ETA relies on, among other things, its unsubstantiated view that it had no knowledge of any alleged discriminatory treatment of Colleen Briner–Schmidt. In addition, ETA maintains that it "actively opposed" discrimination and cites as an example the grievance filed on behalf of Mary Duewel. EEOC disputes these assertions. Given the existence of these genuine issues of material fact, the Magistrate Judge properly denied ETA's cross-motion for summary judgment.

Finally, ETA objects to the Magistrate Judge's conclusion that Colleen Briner–Schmidt's charge was timely filed with the EEOC. In its objections to the report, ETA

---

5. The burden of proof in a Title VII disparate treatment case always remains with the plaintiff. *Fallon v. State of Illinois*, 882 F.2d 1206, 1213 (7th Cir.1989). Further, Title VII disparate treatment cases must be analyzed under the traditional burden shifting analysis articulated

in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and later refined in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

contends that the Magistrate Judge erroneously based his decision on the fact that the collective bargaining agreements were facially discriminatory.

Thereafter, on October 11, 1991, ETA filed its second citation of supplemental authority changing the legal theory underlying its statute of limitations argument. In this subsequent pleading ETA cited *EEOC v. City Colleges of Chicago*, 944 F.2d 339 (7th Cir.1991), for the proposition that a facially neutral labor contract must be challenged no later than 300 days following the date of its execution. For the first time in this litigation, ETA advanced an argument premised on the Supreme Court's decision in *Lorance v. AT & T Technologies, Inc.*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989).[6]

In *City Colleges*, the Seventh Circuit specifically addressed the issue of when the statute of limitations begins to run in an ADEA suit challenging an early retirement plan. In 1982, defendant and its union entered into a new collective bargaining agreement. The early retirement plan included in this agreement provided lesser benefits for older workers. Thereafter, in 1988, EEOC filed suit challenging the validity of the plan under the ADEA. Defendant moved for summary judgment arguing, among other things, that the ADEA suit was time-barred under *Lorance*. In response, EEOC argued that the statute of limitations did not begin to run when the plan was adopted, but rather began to run each time the defendant applied the plan. The district court agreed with the defendant and granted its motion for summary judgment.

On appeal, the Seventh Circuit held that because the retirement plan was facially neutral the statute of limitations commenced on the date the plan was adopted, not with each application of the plan. *City Colleges*, 944 F.2d 339, at 342–43. In reaching this determination, the Seventh

Circuit relied on the Supreme Court's holding in *Lorance* that "... when a seniority system is nondiscriminatory in form and application, it is the allegedly discriminatory *adoption* which triggers the limitations period. ..." 490 U.S. at 911, 109 S.Ct. at 2268 (emphasis in original).

In *Lorance*, however, petitioners did not allege that the seniority system treated similarly situated employees differently, or operated in an intentionally discriminatory manner. 490 U.S. at 905, 109 S.Ct. at 2265. Stated differently, petitioners solely argued that respondent intentionally discriminated on the basis of sex in its *adoption* of the new collective bargaining agreement. 490 U.S. at 903, 109 S.Ct. at 2264. Clearly, the factual and legal scenario present in *Lorance* is distinguishable from the instant case.

Here, EEOC argues that the leave provisions in the collective bargaining agreements are discriminatory on their face and in their operation. Even though the Court has rejected EEOC's contention that the collective bargaining agreements are facially discriminatory, we agree that EEOC's challenge to the alleged disparate effect ETA's leave provisions have on pregnant teachers versus non-pregnant teachers remains a viable theory. In our view, EEOC's argument that the leave provisions of the collective bargaining agreements are discriminatorily applied to pregnant teachers takes this case outside of the holding in *Lorance*.

Equally important, the continued viability of *Lorance* is questionable in light of the recent amendments to the Civil Rights Act of 1964. Section 706(d), 42 U.S.C. § 2000e–5(e), which establishes the time for filing charges, was recently amended by the Civil Rights Act of 1991, Pub.L. No. 102–166 (Nov. 21, 1991). The following new paragraph was added to this section:

6. EEOC strenuously objects to ETA's belated attempt to raise a *Lorance* argument. EEOC argues that ETA's timeliness argument is waived as a result of its dilatory conduct. While ETA may have changed the legal theory underlying its limitations argument, ETA did raise as an

affirmative defense the failure of Colleen Briner–Schmidt to file a timely charge with the EEOC. In fact, the Magistrate Judge specifically reached this issue in his report. Therefore, in order to foster judicial economy and efficiency, we will reach the merits of ETA's argument.

For purposes of this section, an unlawful employment practice occurs, with respect to a seniority system that has been adopted for an intentionally discriminatory purpose in violation of this title (whether or not that discriminatory purpose is apparent on the face of the seniority provision), when the seniority system is adopted, when an individual becomes subject to the seniority system, or when a person aggrieved is injured by the application of the seniority system or provision of the system.

In light of the foregoing statutory amendment, it is clear that EEOC's suit is not time-barred.

## II. CONCLUSION

For the reasons outlined, we adopt in part and reject in part Magistrate Judge Rosemond's Report and Recommendation of February 28, 1991. EEOC's motion for partial summary judgment on the issue of liability is denied. Consistent with the Magistrate Judge's report, ETA's cross-motion for summary judgment is denied.