**Kimberly Hern TROUPE,**
**Plaintiff–Appellant,**

**v.**

**The MAY DEPARTMENT STORES COMPANY, doing business as Lord & Taylor, Defendant–Appellee.**

**No. 93–2523.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 18, 1994.

Decided March 31, 1994.

Ernest T. Rossiello (argued), Margaret A. Zuleger, Rossiello & Associates, Chicago, IL, for plaintiff-appellant.

William M. Walsh, Sonnenschein, Nath & Rosenthal, Chicago, IL, Ronald J. Dolan, Lori Kay Cochran, Betty L. Thorne (argued), May Dept. Stores, St. Louis, MO, for defendant-appellee.

Before POSNER, Chief Judge, and EASTERBROOK and RIPPLE, Circuit Judges.

POSNER, Chief Judge.

In 1978, Congress amended Title VII of the Civil Rights Act of 1964 to prohibit discrimination on account of pregnancy: "women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k). The Supreme Court had held in the *Gilbert* case that discrimination on account of sex did not include discrimination on account of pregnancy, so employers were free to exclude medical expenses relating to pregnancy and childbirth from their medical-benefits plans. *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). The pregnancy-discrimination amendment overruled *Gilbert*, see *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 678, 103 S.Ct. 2622, 2628, 77 L.Ed.2d 89 (1983), but, as the text we have quoted makes clear, goes further. See, e.g., *International Union, United Automobile Workers v. Johnson Controls, Inc.*, 499 U.S. 187, 198–99, 111 S.Ct. 1196, 1203–04, 113 L.Ed.2d 158 (1991). How much further is the issue in this case.

The plaintiff, Kimberly Hern Troupe, was employed by the Lord & Taylor department store in Chicago as a saleswoman in the women's accessories department. She had begun working there in 1987, initially working part time but from July 1990 full time. Until the end of 1990 her work was entirely satisfactory. In December of that year, in the first trimester of a pregnancy, she began experiencing morning sickness of unusual severity. The following month she requested and was granted a return to part-time status, working from noon to 5:00 p.m. Partly it seems because she slept later under the new schedule, so that noon was "morning" for her, she continued to experience severe morning sickness at work, causing what her lawyer describes with understatement as "slight" or "occasional" tardiness. In the month that ended with a warning from her immediate supervisor, Jennifer Rauch, on February 18,, she reported late to work, or left early, on nine out of the 21 working days. The day after the warning she was late again and this time received a written warning. After she was tardy three days in a row late in March, the company on March 29 placed her on probation for 60 days. During the probationary period Troupe was late eleven more days; and she was fired on June 7, shortly after the end of the probationary period. She testified at her deposition that on the way to the meeting with the defendant's human resources manager at which

she was fired, Rauch told her that "I [Troupe] was going to be terminated because she [Rauch] didn't think I was coming back to work after I had my baby." Troupe was due to begin her maternity leave the next day. We do not know whether it was to be a paid maternity leave but at argument Lord & Taylor's counsel said that employees of Lord & Taylor are entitled to maternity leave with half pay. We must assume that after Troupe was fired she received no medical benefits from Lord & Taylor in connection with her pregnancy and the birth of her child; for she testified without contradiction that she received no monetary benefits of any kind, other than unemployment benefits, after June 7, 1991. We do not know whether Lord & Taylor was less tolerant of Troupe's tardiness than it would have been had the cause not been a medical condition related to pregnancy. There is no evidence on this question, vital as it is.

In granting Lord & Taylor's motion for summary judgment, the district judge said that there is a "direct" and an "indirect" method of proving pregnancy discrimination, that the plaintiff used the direct method, that that method requires "direct evidence" of discrimination, meaning evidence that proves discrimination "without the need for inference or presumption," and that Troupe failed to produce any such evidence. Although language in some of our opinions, such as *Aungst v. Westinghouse Electric Corp.*, 937 F.2d 1216, 1221 (7th Cir.1991), and *McCoy v. WGN Continental Broadcasting Co.*, 957 F.2d 368, 372 (7th Cir.1992), could be read to support this way of framing and resolving the issue, we acknowledge the potential for confusion and will take this opportunity to try to clarify the circuit's position.

■ Different kinds and combinations of evidence can create a triable issue of intentional discrimination ("disparate treatment," in the jargon of discrimination law), the only kind of discrimination alleged in this case. One kind is evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents, as in *Mojica v. Gannett Co.*, 7 F.3d 552, 561 (7th Cir.1993) (en banc). Such evidence is indeed direct evidence as distinct from circumstan-

tial; and since intent to discriminate is a mental state and mind reading not an accepted tool of judicial inquiry, it may be the only truly direct evidence of intent that will ever be available. But circumstantial evidence is admissible too, to provide a basis for drawing an inference of intentional discrimination.

■ Three types of circumstantial evidence of intentional discrimination can be distinguished. The first consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. *Giacoletto v. Amax Zinc Co.*, 954 F.2d 424 (7th Cir.1992); *Holland v. Jefferson National Life Ins. Co.*, 883 F.2d 1307, 1314–15 (7th Cir.1989). This is the most common type of evidence in an intentional discrimination case, now that employers have taught their supervisory employees not to put discriminatory beliefs or attitudes into words oral or written. Second is evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment. *American Nurses' Ass'n v. Illinois*, 783 F.2d 716, 728 (7th Cir.1986). And third is evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination. *St. Mary's Honor Center v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993); *Ayala v. Mayfair Molded Products Corp.*, 831 F.2d 1314, 1318 (7th Cir.1987). Each type of evidence is sufficient by itself (depending of course on its strength in relation to whatever other evidence is in the case) to support a judgment for the plaintiff; or they can be used together.

■ The plaintiff in this case did not present any circumstantial evidence of the second or third type—that is, either comparative or pretext. She presented no evidence about the treatment of other employees; and be-

cause of her tardiness she could not show that she met the employer's requirements for her job, and thus she could not raise an issue of pretext. So, the defendant argues, the plaintiff was required to present evidence that the defendant had acknowledged that it discriminates against pregnant women. This is wrong. It merges what we called direct evidence of discriminatory intent with the first kind of circumstantial evidence, the kind that consists of ambiguous statements, suspicious timing, discrimination against other employees, and other pieces of evidence none conclusive in itself but together composing a convincing mosaic of discrimination against the plaintiff. For it is not true that to get over the hurdle of summary judgment a plaintiff must produce the equivalent of an admission of guilt by the defendant. All that is required is evidence from which a rational trier of fact could reasonably infer that the defendant had fired the plaintiff because the latter was a member of a protected class, in this case the class of pregnant women. *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 658 (7th Cir.1991) (en banc); cf. *Perfetti v. First National Bank*, 950 F.2d 449, 450 (7th Cir.1991); *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1364 (7th Cir.1988); but cf. *Hughes v. Matthews*, 986 F.2d 1168, 1170 (8th Cir.1992) (per curiam).

■ We must examine the record in the light of these principles. The great, the undeniable fact is the plaintiff's tardiness. Her lawyer argues with great vigor that she should not be blamed—that she was genuinely ill, had a doctor's excuse, etc. That would be pertinent if Troupe were arguing that the Pregnancy Discrimination Act requires an employer to treat an employee afflicted by morning sickness better than the employer would treat an employee who was equally tardy for some other health reason. This is rightly not argued. If an employee who (like Troupe) does not have an employment contract cannot work because of illness, nothing in Title VII requires the employer to keep the employee on the payroll. *Bush v. Commonwealth Edison Co.*, 990 F.2d 928, 931 (7th Cir.1993); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1107, 1115 (7th Cir.1992).

Against the inference that Troupe was fired because she was chronically late to arrive at work and chronically early to leave, she has only two facts to offer. The first is the timing of her discharge: she was fired the day before her maternity leave was to begin. Her morning sickness could not interfere with her work when she was not working because she was on maternity leave, and it could not interfere with her work when she returned to work after her maternity leave because her morning sickness would end at the latest with the birth of her child. Thus her employer fired her one day before the problem that the employer says caused her to be fired was certain to end. If the discharge of an unsatisfactory worker were a purely remedial measure rather than also, or instead, a deterrent one, the inference that Troupe wasn't really fired because of her tardiness would therefore be a powerful one. But that is a big "if." We must remember that after two warnings Troupe had been placed on probation for sixty days and that she had violated the implicit terms of probation by being as tardy during the probationary period as she had been before. If the company did not fire her, its warnings and threats would seem empty. Employees would be encouraged to flout work rules knowing that the only sanction would be a toothless warning or a meaningless period of probation.

Yet this is only an interpretation; and it might appear to be an issue for trial whether it is superior to Troupe's interpretation. But what *is* Troupe's interpretation? Not (as we understand it) that Lord & Taylor wanted to get back at her for becoming pregnant or having morning sickness. The only significance she asks us to attach to the timing of her discharge is as reinforcement for the inference that she asks us to draw from Rauch's statement about the reason for her termination: that she was terminated because her employer did not expect her to return to work after her maternity leave was up. We must decide whether a termination so motivated is discrimination within the meaning of the pregnancy amendment to Title VII.

Standing alone, it is not. (It could be a breach of contract, but that is not alleged.) Suppose that Lord & Taylor had an employee named Jones, a black employee scheduled to take a three-month paid sick leave for a kidney transplant; and whether thinking that he would not return to work when his leave was up or not wanting to incur the expense of paying him while he was on sick leave, the company fired him. In doing so it might be breaking its employment contract with Jones, if it had one, or violating a state statute requiring the payment of earned wages. But the company could not be found guilty of racial discrimination unless (in the absence of any of the other types of evidence of discrimination that we have discussed) there was evidence that it failed to exhibit comparable rapacity toward similarly situated employees of the white race. We must imagine a hypothetical Mr. Troupe, who is as tardy as Ms. Troupe was, also because of health problems, and who is about to take a protracted sick leave growing out of those problems at an expense to Lord & Taylor equal to that of Ms. Troupe's maternity leave. If Lord & Taylor would have fired our hypothetical Mr. Troupe, this implies that it fired Ms. Troupe not because she was pregnant but because she cost the company more than she was worth to it.

■ The Pregnancy Discrimination Act does not, despite the urgings of feminist scholars, e.g., Herma Hill Kay, "Equality and Difference: The Case of Pregnancy," 1 *Berkeley Women's L.J.* 1, 30–31 (1985), require employers to offer maternity leave or take other steps to make it easier for pregnant women to work, cf. *California Federal Savings & Loan Ass'n v. Guerra*, 479 U.S. 272, 286–87, 107 S.Ct. 683, 692–93, 93 L.Ed.2d 613 (1987); *Barrash v. Bowen*, 846 F.2d 927 (4th Cir.1988) (per curiam); 29 C.F.R. § 1604.10(b) and App. to Pt. 604 (EEOC Guidelines on Discrimination Because of Sex: Questions and Answers on the Pregnancy Discrimination Act)—to make it as easy, say, as it is for their spouses to continue working during pregnancy. Employers can treat pregnant women as badly as they treat similarly affected but nonpregnant employees, even to the point of "conditioning the availability of an employment benefit on an employee's decision to return to work after the end of the medical disability that pregnancy causes." *Maganuco v. Leyden Community High School Dist. 212*, 939 F.2d 440, 445 (7th Cir.1991). *Maganuco* and other cases hold that disparate impact is a permissible theory of liability under the Pregnancy Discrimination Act, as it is under other provisions of Title VII. *Id.* at 443. But, properly understood, disparate impact as a theory of liability is a means of dealing with the residues of past discrimination, rather than a warrant for favoritism. *Finnegan v. Trans World Airlines, Inc.*, 967 F.2d 1161, 1164 (7th Cir.1992).

The plaintiff has made no effort to show that if all the pertinent facts were as they are except for the fact of her pregnancy, she would not have been fired. So in the end she has no evidence from which a rational trier of fact could infer that she was a victim of pregnancy discrimination. The Supreme Court noted recently that the age discrimination "law requires the employer to ignore an employee's age ...; it does not specify *further* characteristics that an employer must also ignore," such as pension expense. *Hazen Paper Co. v. Biggins*, ── U.S. ──, ──, 113 S.Ct. 1701, 1707, 123 L.Ed.2d 338 (1993) (emphasis in original). The Pregnancy Discrimination Act requires the employer to ignore an employee's pregnancy, but (as the quotation from *Maganuco* shows) not her absence from work, unless the employer overlooks the comparable absences of nonpregnant employees, 29 C.F.R. App., *supra*; cf. *Adams v. Nolan*, 962 F.2d 791, 795–96 (8th Cir.1992)—in which event it would not be ignoring pregnancy after all. *Nashville Gas Co. v. Satty*, 434 U.S. 136, 138–43, 98 S.Ct. 347, 349–52, 54 L.Ed.2d 356 (1977); *Fleming v. Ayers & Associates*, 948 F.2d 993, 997 (6th Cir.1991). Of course there may be no comparable absences, cf. *Barrash v. Bowen, supra*, 846 F.2d at 931–32; but we do not understand Troupe to be arguing that the reason she did not present evidence that nonpregnant employees were treated more favorably than she is that (in contrast to *EEOC v. Ackerman, Hood & McQueen, Inc.*, 956 F.2d 944 (10th Cir.1992)) there is no comparison group of Lord & Taylor employ-

ees. What to do in such a case is an issue for a case in which the issue is raised. (We do not even know how long Troupe's maternity leave was supposed to be.) We doubt that finding a comparison group would be that difficult. Troupe would be halfway home if she could find one nonpregnant employee of Lord & Taylor who had *not* been fired when about to begin a leave similar in length to hers. She either did not look, or did not find. Given the absence of other evidence, her failure to present any comparison evidence doomed her case.

AFFIRMED.