NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 12, 2012
Decided August 10, 2012

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 10-1499

| | |
|---|---|
| LYNETTE K. DUPREE, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Northern District of Illinois, |
| | Eastern Division. |
| *v.* | |
| | No. 08 C 2114 |
| RAYMOND H. LAHOOD, | |
| *Defendant-Appellee.* | Joan Humphrey Lefkow, |
| | *Judge.* |

**O R D E R**

Lynette DuPree contends that she was discriminated against on the basis of her status as an African-American woman when she was denied a promotion at the Federal Aviation Administration. She brought race and sex claims under Title VII, *see* 42 U.S.C. § 2000e-2, against the Secretary of the Department of Transportation. The Secretary moved for summary judgment, which the district court granted. Because she has not provided evidence from which a rational trier of fact could conclude that the promotion decision was motivated by her race or sex, we affirm the judgment of the district court.

Because we are reviewing a grant of summary judgment, we present the facts and their reasonable inferences in DuPree's favor. *See Smith v. Bray*, No. 11-1935, 2012 U.S. App. LEXIS 10471, at *3–4 (7th Cir. May 24, 2012). Over 16 years Dupree has steadily progressed her way up the ageny's hierarchy, starting from a mail processing clerk, to her current job as a Telecommunications Specialist in the Operations Branch of the FAA. The Operations Branch controls radars, automation, fiber optics, and satellites within the National Airspace System. This Branch contains the Telecommunications and Spectrum Engineering Section (TSE), which oversees two groups. The telecommunications group, where Dupree works, manages telecommunications equipment. The spectrum engineering group consists of engineers who ensure that there is no frequency interference at new radar or communications facilities. As a Specialist in the telecommunications group, DuPree procures equipment and manages a budget. She is the only African-American woman in the 90-person Operations Branch.

Soon after DuPree started her current job in 1989, Claude Nunez became her supervisor. As early as 2000 DuPree began telling him that she wanted to move to a higher pay grade. Nunez advised DuPree to obtain more experience on the national level, on the field level, on projects with higher visibility, and with the National Airspace System, all of which she did. DuPree worked on a national contract that gave her both local field experience and award recognition on the national level. At a staff meeting, however, Nunez failed to acknowledge DuPree's work on the national contract even though he praised every other member of the section. Nunez later told Dupree that he did not praise her at the meeting because she had already been recognized nationally for that project.

DuPree made other efforts to secure a promotion. She worked a six-month "detail" in 2002 as a temporary TSE Supervisor. DuPree took the temporary position even though, because she was not an engineer, she could not receive the temporary pay increase that four others (white males) had received when they handled the detail. During the six-month detail, lead engineers complained to Nunez that DuPree was not properly using them or coordinating assignments. Moreover, DuPree's relationship with her administrative assistant deteriorated badly. These conflicts, however, resolved themselves by the time the detail ended.

Shortly after DuPree's detail as TSE Supervisor ended, the FAA decided to make the supervisory position permanent. The vacancy announcement said that the position requires both an advanced knowledge of "the technical aspects of the work directed" and "budget, human resource, and other administrative polices and procedures." Unlike in the past, the position was not limited to engineers; anybody with a high degree of technical ability could apply.

Fewer than 20 people applied for the position. The applicants included DuPree and Jeff McCoy, who was, like DuPree, a non-engineer, but, unlike DuPree, a white male. Diana Maeillo, a personnel specialist in Human Resources, reviewed the applications and compiled a list of 13 unranked candidates who met the minimum qualifications. Maeillo sent the list to Nunez, who was to review the candidates and make his recommendation to Jody Oles, the Operations Branch Manager. Oles would make the hiring decision based on Nunez's recommendation.

Nunez wrote a memo recommending McCoy, and Oles accepted the advice. (Nunez recommended at least one other candidate over DuPree.) The recommendation memo explained that McCoy had the most extensive technical experience of all the candidates. Nunez later testified that this was the most important factor because the Operation Branch's first priority is to ensure that all telecommunications systems remain operating and to restore connectivity immediately if they fail. Nunez cited McCoy's receipt of the FAA's prestigious "Technician of the Year" award in 2002, his leadership and supervisory skills, and his involvement in a program that required high-level oral and written briefings on technical matters. As for DuPree, Nunez reported that, although she had more years with the FAA than McCoy and notable successes in her career, her application failed to describe adequately her ability to identify and solve technical problems.

DuPree challenges the honesty of this recommendation by citing testimony at an administrative hearing before the EEOC and from two depositions. At the EEOC hearing, Nunez testified about the differences in technical skills between men and women:

Q: Here's my question. Let me try it again. There are some people who will argue that women aren't as good at math as men are. And then there will be lots of people to then try to explain, if you accept that assumption, this is having to do with what they're directed towards in education and that kind of thing. In your experience, have you found that—let's go with the issue of gender—that the kind of technical expertise needed for this position is more likely to be found in men than women?

A: Based on the demographics of our organization, I guess I would tend to agree with that.

Q: Okay. And I thank you for your candor. I really do . . . I mean, you made your decision at the time. And knowing we were going to come to this hearing, have you given some consideration as to whether or not the conclusion that you have just articulated in any way might have gone into

why you were more likely to favor somebody with Mr. McCoy's background as opposed to my client's background?

A: Could you repeat that again?

Q: Sure. Given what you have just said, and I think we're dealing with the real world here, is it possible that based upon that experience, you are more likely to believe that a male like Mr. McCoy may be more likely to have the technical skill sets than a female like my client?

A: I would agree with that.

Q: Okay.

A: Again, based on our demographics.

Nunez also testified in a later deposition that he thought DuPree "shied away" from technical issues (though he could not provide an example) because her focus was on more administrative matters. Finally, DuPree testified that while she was performing a temporary promotion in the 1990's, a white female accused DuPree of showing favoritism toward an African-American worker. With no investigation, DuPree says, Nunez told DuPree, "We can't have this," and ended her promotion that day.

In opposing the FAA's motion for summary judgment, DuPree relied on both the direct and indirect methods of proof. Under the direct method, DuPree argued that Nunez harbored anti-black and anti-female bias, that he acted on this bias in making his recommendation, and that Nunez's stated reasons for not choosing her are pretextual. Under the indirect method, DuPree argued that she was similarly situated to McCoy and that, as she argued under the direct method, Nunez's reasons for choosing McCoy were merely a pretext for discrimination. The district court disagreed, and granted summary judgment for the defendant. The court reasoned that DuPree's evidence at most establishes that the FAA personnel made the wrong decision, not that they are lying about their reasons.

On appeal DuPree renews her race and sex claims under both the direct and indirect methods of proof. Under the direct method of proof, a plaintiff "must demonstrate a triable issue as to whether discrimination motivated the adverse employment action." *Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012); *Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 672 (7th Cir. 2011). A triable issue might exist based on circumstantial evidence, which

may take the form of a "mosaic." *See Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994). But *Troupe*, which first used the "mosaic" language, did not create a separate standard: The bottom-line question is still whether the plaintiff has presented evidence from which a rational trier of fact could reasonably infer that the defendant took an adverse employment action against the plaintiff because the latter was a member of a protected class. *Dass v. Chi. Bd. of Educ.*, Nos. 10-3844 & 11-1104, 2012 U.S. App. LEXIS 7373, at *30–*31 (7th Cir. Apr. 12, 2012); *Hanners*, 674 F.3d at 692; *Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 904 (7th Cir. 2006). Moreover, the plaintiff's circumstantial evidence "must point directly to a discriminatory reason for the employer's action and be directly related to the employment decision." *Dass*, 2012 U.S. App. LEXIS 7373, at *32 (internal quotation marks and citations omitted).

For her direct case, DuPree argues that the record contains several "bits and pieces from which an inference of discriminatory intent might be drawn." *Dass*, 2012 U.S. App. LEXIS 7373, at *31–32; *see also Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 720–21 (7th Cir. 2008); *Troupe*, 20 F.3d at 736. She relies heavily on Nunez's testimony about the differences in technical skills between men and women. She also invokes Nunez's testimony that DuPree supposedly "shied away" from technical issues; his refusal to praise her at a staff meeting; and Nunez's decision to end DuPree's temporary promotion after a white employee complained that DuPree was favoring a black employee.

Nunez's testimony that, based on the FAA's demographics, males may be more likely than females to have the needed technical skills may reflect his beliefs about the labor pool. A jury could rationally infer from this testimony that Nunez presumes that in the labor market men may be more likely than women to possess these technical skills. But even so, this is not evidence that when comparing a male and female who both possess the minimum required skills, he ignores their actual qualifications and instead relies on that presumption. To violate Title VII, a decision-maker must actually rely on an impermissible bias in deciding whom to employ. *See Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003) (ruling that even if decisionmaker was biased against African-Americans, plaintiff must have evidence that decisionmaker relied on the bias in making employment decision); *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001) ("[B]igotry, *per se*, is not actionable. It is actionable only if it results in injury to a plaintiff."); *Chambers v. American Trans Air, Inc.*, 17 F.3d 998, 1004 (7th Cir. 1994 ) ("Liability under Title VII does not turn on the bigotry of company managers unless that bigotry resulted in injury to the plaintiff."). Nunez's EEOC testimony is not evidence of such reliance.

DuPree replies that her other evidence shows that Nunez does act on improper biases:  He praised everyone but her at a staff meeting, he asserted without proof at his deposition that she "shied away" from technical issues, and he ended her temporary

promotion merely because a coworker accused her of favoring blacks. But when taken together and placed in context, none of this evidence supports an inference that Nunez acts on prohibited biases. First, Nunez explained that because DuPree's contract work had *already* been nationally recognized, he did not need to laud her again at the staff meeting. Second, Nunez substantiated in his recommendation memo how DuPree, in her application for the promotion, neglected to explain adequately how she solves technical problems. Finally, Nunez's decision to halt DuPree's temporary promotion after a co-worker accused DuPree of favoring blacks does not suggest bias because DuPree has no evidence that Nunez reacts differently when workers are accused of white favoritism.

In pursuing her direct case, DuPree next relies on a second set of circumstantial evidence, "evidence that the plaintiff was qualified for the job in question but was passed over in favor of a person outside the protected class and that the employer's stated reason was a pretext for discrimination." *Dass*, 2012 U.S. App. LEXIS 7373, at *31–32; *Petts*, 534 F.3d at 720–21; *Troupe*, 20 F.3d at 736. But "evidence of the applicants' competing qualifications does not constitute evidence of pretext unless those differences are so favorable to the plaintiff that there can be no dispute among reasonable persons of impartial judgment that the plaintiff was clearly better qualified for the position at issue." *Fischer v. Avanade, Inc.*, 519 F.3d 393, 404 (7th Cir. 2008); *Mlynczak v. Bodman*, 442 F.3d 1050, 1059–60 (7th Cir. 2006); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002).

DuPree does not even assert that she was clearly more qualified for the job than McCoy. She simply provides evidence that she acquired some technical experience and that she was more qualified than McCoy in some areas. This is not evidence that she was "clearly better qualified" than McCoy overall, who unlike DuPree was both Technician of the Year and demonstrated supervisory and high-level communications skills. DuPree responds that the job posting never asserted that technical skills were more important than administrative ones. But given the technical nature of the TSE Section and the fact that DuPree, unlike McCoy, had previously worked in *only* a largely administrative section of the TSE, a rational trier of fact could not say that DuPree was clearly superior to McCoy. Without evidence that the FAA's reliance on McCoy's superior qualifications was pretextual, DuPree cannot survive summary judgment on her direct case *or* on her indirect case. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011).

AFFIRMED.