129 F.3d 1268
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Kenneth J. WATSON, Plaintiff-Appellant,
v.
MCI COMMUNICATIONS CORP. and MCI Telecommunications Corp.,
Defendants-Appellees.
 No. 97-1660.
 United States Court of Appeals, Seventh Circuit.
 Submitted Oct. 1, 1997.
Decided Oct. 27, 1997.
 
 1
 Before Hon. POSNER, Chief Judge, Hon. Jesse E. ESCHBACH, Circuit Judge and Hon. John L. COFFEY, Circuit Judge
 
 ORDER
 
 2
 Kenneth Watson, an African-American, began working as a product manager at MCI Communications Corporation and MCI Telecommunications Corporation (collectively "MCI") in March 1992. A few months later, MCI reorganized and Watson became a member of the Data Applications Group (Data Group) of MCI's Central Region. Managers ultimately were assigned in November 1992 to the three other support groups but not to the Data Group. Watson then filed suit under 42 U.S.C. § 2000e et seq., alleging that he effectively was performing the duties of the manager of the Data Group but was not promoted due to his race. The district court granted summary judgment to the defendants. We affirm.
 
 
 3
 After the reorganization in mid-1992, Michael Lanke was named Regional Field Support Manager for the Central Region The Central Region was broken into four groups. Inbound Application Group, the Outbound Application Group, the Global Application Group, and the Data Group. The four groups had approximately twelve to thirteen members total. Lanke was responsible for determining how the new groups would be structured and whether managers would be assigned in each group. Lanke told the members of the four groups that he had elected to delay the naming of managers after the reorganization so that he could assess the needs and direction of each of the groups. Watson asserts that Lanke effectively named managers of each of the groups without providing the title and compensation and that Watson was asked to perform the managerial duties for the Data Group. He states that he "coordinated training for his group, attended manager's meetings, prepared reports and otherwise performed all managerial duties for his respective group," and that "other employees were encouraged to treat him as a manager." Appellant's Br. at 2. MCI asserts that while Watson did acquire additional responsibilities within his group, he was not asked to perform managerial functions.
 
 
 4
 According to Watson, Lanke named managers to all of the groups except his in November 1992. In February 1993, Watson asked Lanke why he had not yet been promoted to the manager of the Data Group in light of the promotions made in the other three groups within the Central Region. Lanke responded that he did not feel the need to name a manager of the Data Group and, in fact, no manager had been named as of the date that the appellee's brief was filed. According to MCI, it was decided that no such position was to be created within the Central Region.
 
 
 5
 The defendants moved for summary judgment on September 20, 1996. The district court granted the motion on February 24, 1997, concluding that the plaintiff had not demonstrated that a genuine issue of material fact existed as to whether he was treated differently than allegedly similarly situated employees who were not African-American. Watson appeals contending that the district court erred in its determination.
 
 
 6
 The defendants first argue that this court lacks jurisdiction to consider the appeal because the notice of appeal filed by the plaintiff gives the date of the order appealed from as March 21, 1997, rather than the correct date of February 24, 1997. Federal Rule of Appellate Procedure 3(c) provides that the notice of appeal "shall designate the judgment, order or part thereof appealed from." The defendants assert that the notice of appeal was defective because of the incorrect date and fails to serve as a notice of appeal on the only issue Watson argues in his brief Rule 3(c), however, must be liberally construed. United States v. Michelle's Lounge, 39 F.3d 684, 691 (7th Cir.1994). The defective notice of appeal is sufficient to establish jurisdiction in this court. See id.
 
 
 7
 Watson next claims that the district court erred in concluding that he had not met his burden of proof to support his claim that he was not promoted to manager of the Data Group in the Central Region because of his race.[1] This court reviews the grant of a summary judgment motion de novo. Sample v. Aldi, 61 F.3d 544, 546 (7th Cir.1995). Because he offers no direct evidence of discrimination, Watson relies on the indirect method of proof provided in McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973). Under this construct, Watson maintains the initial burden to state a prima facie case of discrimination. Brill v. Lante Corp., 119 F.3d 1266, 1270 (7th Cir.1997). Once he does so, the burden shifts to MCI to articulate a non-discriminatory reason for failing to promote Watson. Id. Provided MCI does this, Watson then bears the burden of demonstrating that the reasons given by MCI were pretextual. Id. In order to establish a prima facie case of discrimination in a failure to promote case, the plaintiff must demonstrate that "(1) [ ]he was a member of a protected group; (2)[ ]he applied for and was qualified for the position sought; (3)[ ]he was rejected for the position; and (4) those that were promoted had similar or lesser qualifications for the job, or, in other words, they were not more qualified than [ ]he." Id.
 
 
 8
 Watson is unable to establish a prima facie case because Watson never applied for and never was rejected for the position of manager as one was never named to the Data Group of the Central Region. Even under the district court's approach requiring that Watson show only that he was treated differently than similarly situated employees, Watson still had not established a prima facie case of discrimination.
 
 
 9
 Watson argues that although three other employees were promoted to manager in their respective groups, he was denied the promotion in his department because he was African-American. Watson has failed, however, to show that he was similarly situated. Watson offers no evidence showing how long the other employees had been employed by MCI before their promotion, their background and experience in the industry and their respective fields, their education, their duties within their respective groups, and the needs and objectives of the groups to which they were assigned. Watson's affidavit provides none of the detailed evidence necessary to create a genuine issue of material fact as to whether he was similarly situated to the others who were promoted. See Anderson v. Baxter Healthcare Corp., 13 F.3d 1120, 1125 (7th Cir.1994) The conclusory affidavit by his coworker, Lisa Robinson, lacks merit for the same reason.
 
 
 10
 Watson also asserts that he was similarly situated to two other individuals, Dunlap and Scarbrough. Although not clear from his affidavit, it appears these two people were named managers of the Data Groups in the two other regions created by the reorganization. Again, however, Watson offers no details as to how he was similarly situated to these employees. The affidavit provides no information as to the education and employment background of Scarbrough and Dunlap, their positions and responsibilities prior to the reorganization, the organizational structure and needs of their groups, their first names or even their race.[2] Again, such conclusory allegations are insufficient to create a genuine issue of material fact.
 
 
 11
 Even if Watson were able to establish a prima facie case of discrimination, he wholly fails to create a genuine issue of material fact as to whether the reasons offered by MCI for not promoting him to Data Group manager were pretextual. MCI asserts that he was not promoted because it was decided that a manager for that group was not needed. Watson's supervisor told each employee in the Central Region that managers would not be named initially for the four groups and indicated to Watson on several subsequent occasions that it was not a certainty that a manager would be appointed for the Data Group. Even if, as Watson asserts in his affidavit, he was told he would be made manager, he still has failed to demonstrate that the ultimate failure to name him as manager was the result of discrimination. It is not this court's role to revisit legitimate business decisions. See Kuhn v. Ball State Univ., 78 F.3d 330, 332 (7th Cir.1996) ("Employers may act for many reasons, good and bad; they may err in evaluating employees' strengths; unless they act for a forbidden reason, these errors, (more properly, differences in assessment) do not matter."); see also Kralman v. Illinois Dep't of Veteran Affairs, 23 F.3d 150, 156 (7th Cir.1994). Watson has provided no evidence that MCI lied about the reason for not promoting him to manager.
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 Watson also alleged in his amended complaint that he was denied training opportunities, was not provided with resources, and also was denied promotions to the Regional Field Marketing position and the Branch Manager-Chicago position, in addition to raising a disparate impact claim. These issues are not discussed in Watson's brief and thus are waived on appeal. Harris v. City of Marion, 79 F.3d 56, 59 (7th Cir.1996)
 
 
 [2]
 Although not stated in the affidavit, Watson's Response to MCI's Motion for Summary Judgment indicates that the two men were John Dunlap and John Scarbrough, non-african-Americans. Plaintiffs Response to Defendant's Motion for Summary Judgment, Supplemental Record, Vol. 1 at 6