142 F.3d 439
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Michael B. FERNANDO, M.D., Plaintiff-Appellant,
v.
Rush-Presbyterian-St. Luke's, Medical Center, Defendant-Appellee.
 No. 97-3157.
 United States Court of Appeals,
Seventh Circuit.
 .
Submitted Mar. 26, 1998*.
Decided Mar. 27, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 94 C 6652 Charles R. Norgle, Sr., Judge.
 Before Hon. JOEL M. FLAUM, Hon. MICHAEL S. KANNE, Hon. TERENCE T. EVANS, Circuit Judges.
 
 ORDER
 
 1
 Michael B. Fernando, M.D., an African American, appeals the district court's grant of summary judgment in favor of his former employer, Rush-Presbyterian-St. Luke's Medical Center ("Rush") on his claims of racial discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1) ("Title VII"). We affirm.
 
 
 2
 Fernando was employed in Rush's pathology residency program from July 1992 until June 1996 through a series of one-year written contracts. Fernando's complaint generally alleges that several attending physicians at Rush subjected him to disparate employment conditions because of his race. Specifically, Fernando alleges that several racially motivated comments were made to him, that a racist comment was made in one of his evaluations, and that he once was made the brunt of a joke during a case conference. Fernando told Dr. Haber and Dr. Schwartz, who were responsible for training, supervising, and evaluating the pathology residents, that he believed he was being treated differently on the basis of race, but they did not take any immediate action and Fernando submitted a formal grievance in January 1994. Rush convened a grievance body to address Fernando's complaints, and several evidentiary hearings were held. The grievance body found that the complained-of evaluation should be removed from Fernando's file because it may have contained a racially motivated comment, but determined that Fernando's other complaints were unsubstantiated. Fernando also filed a charge with the EEOC.
 
 
 3
 In May 1994, Fernando took a medical leave of absence for depression and failed to appear for a June 1994 meeting with Haber and Schwartz to discuss his poor performance evaluations. Despite the negative evaluations that Fernando had been receiving since the beginning of his residency from the majority of the attending physicians criticizing his attitude, his failure to accept responsibility for his mistakes, and his lack of skills in certain areas, Rush nonetheless renewed his contract in July of 1994 for another one-year term.
 
 
 4
 When Fernando returned from his leave of absence in June of 1995, Haber and Schwartz immediately met with him to discuss his most recent set of evaluations. They placed him on probation for failure to participate in the formal education activities; failure to follow procedures; "overdefensiveness" and "overconfidence" in responding to constructive criticism and directions; failure to take responsibility for performance errors; and inadequate development of knowledge base and pathology skills. Because he specifically requested to not be placed on surgical rotations immediately upon his return and because his medical license had expired, Fernando's duties were restricted and his probation lasted indefinitely until he could again work in the surgical pathology area where his work could be sufficiently evaluated.
 
 
 5
 As soon as Fernando was placed on a clinical rotation in November 1995, immediate problems ensued. For instance, Fernando failed to report the proximately of a cancer tumor to the edge of a tissue specimen, despite specific oral and written instructions to pay particular attention to this detail. As a result of this error, a patient was erroneously told that radiation was unnecessary. When Haber and Schwartz met with Fernando regarding the incident, he refused to accept responsibility. In January 1996, Fernando sought to consult with Dr. Loew, the attending pathologist, regarding a slide that a surgeon had sent for immediate analysis. Fernando showed Loew a slide of a patient with ovarian cancer but told Loew that he was viewing a thyroid specimen from a surgeon's patient. When Loew reported to the surgeon in the operating room that the patient had cancer, the surgeon questioned the result, and Loew discovered Fernando's mistake upon rechecking the slide. Fernando only accepted partial responsibility for the mistake.
 
 
 6
 In February 1996, the pathology department faculty voted unanimously not to renew Fernando's contract after its expiration on June 30, 1996. The faculty also unanimously agreed that Fernando should not be permitted to work on patient care assignments during the remainder of his existing contract period.
 
 
 7
 After receiving a right to sue letter from the EEOC, Fernando brought various employment discrimination claims against Rush, which the district court construed as a disparate treatment claim, a hostile work environment claim, and claim of retaliation for filing an internal grievance and charges with the Equal Employment Opportunity Commission. The district court granted summary judgment in favor of Rush on all of the claims. The district court held that Fernando failed to establish a prima facie case of disparate treatment based on race under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), because he failed to establish that he was treated less favorably than similarly situated employees of a different race. With respect to both the disparate treatment claim and the retaliation claim, the court held that Fernando failed to show that Rush's proffered reason for his termination (his poor performance) was mere pretext. The district court also found that the complained-of incidents were too few in number, too infrequent, and too innocuous to state a hostile work environment claim.
 
 
 8
 We review the district court's grant of summary judgment de novo, construing the evidence and all reasonable inferences therefrom in the light most favorable to Fernando. Drake v. Minnesota Mining & Manufacturing Co., 134 F.3d 878, 883 (7th Cir.1998). "Summary judgment is appropriate only if the evidentiary record indicates that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ' Id. (quoting Fed.R.Civ.P. 56(c)).
 
 
 9
 Fernando argues that the district court erred granted summary judgment in Rush's favor because it failed to give sufficient weight to the remarks that he claims were racially motivated. The district court did not err in finding that Fernando failed to establish that claims of racial discrimination based on these remarks. Instead, the district court properly found that Fernando failed to meet his burden of establishing discriminatory intent. A plaintiff cannot defeat a motion for summary judgment through conclusory allegations that are mere "[s]elfserving assertions without factual support in the record." Weeks v. Samsung Heavy Industries Co., Ltd., 126 F.3d 926, 934 (7th Cir.1997) (quoting Jones v. Merchants Nat'l Bank & Trust Co., 42 F.3d 1054, 1058 (7th Cir.1994)).
 
 
 10
 Fernando failed to produce sufficient evidence that remarks about which he complains were racially motivated and created a hostile work environment. Even if we were to assume that the complained-of comments were related to race, the district court did not err in finding that the incidents were too few in number, too infrequent, and too innocuous to create a hostile work environment. Isolated and innocuous incidents of discrimination are insufficient to support a hostile environment claim. Drake, 134 F.3d at 885. " 'For the harassment to be actionable, it must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and to create an abusive working atmosphere." ' Id. (citation omitted).
 
 
 11
 Similarly, with respect to his claim of disparate treatment, Fernando failed to establish that he was treated less favorably than similarly situated residents of a different race. Fernando failed to produce any evidence demonstrating that other residents with similarly poor evaluations avoided on probation and/or ultimately termination. Instead, Rush produced numerous affidavits from other residents attesting that the treatment Fernando received at the case conferences was the same as the treatment received by other residents, and it produced evidence that two Caucasian pathology residents were placed on probation for unsatisfactory performance the same year as Fernando and also were terminated.
 
 
 12
 Fernando argues that the facts of the case "do not support a conclusion that [he] was merely incompetent." He also appears to be arguing that, regardless of the mistakes he made, he would not have been terminated if he were not African American. However, Fernando fails to argue on appeal, and there is no evidence in the record, that Rush's explanation for his termination, his poor performance, had no basis in fact, that the explanation was not the "real" reason, or that the reason stated was insufficient to warrant his termination. See Bahl v. Royal Indemnity Co., 115 F.3d 1283, 1291 (7th Cir.1997). In order to prove that Rush's proffered reason for his discharge was mere pretext, Fernando must "squarely rebut the articulated reason for his discharge." Plair v. E.J. Brach & Sons, Inc., 105 F.3d 343, 349 (7th Cir.1997).
 
 
 13
 The district court did not err in holding that Rush's reasons for refusing to renew Fernando's contract were not mere pretext. Indeed, the record is clear that Fernando made chronic, even life-threatening, errors, and that he was placed on probation as a warning to improve his performance or else his contract would not be renewed. See Cowan v. Glenbrook Sec. Serv., Inc., 123 F.3d 438, 445 (7th Cir.1997). When his performance failed to improve, Fernando was terminated. "It is not our province to second-guess the business judgment of an employer where, as here, it acted on ample legitimate justification for [terminating] [Fernando]." Id. at 445-46 (quoting Smith v. Firestone Tire & Rubber Co., 875 F.2d 1325, 1330 (7th Cir.1989)).
 
 
 14
 Moreover, as the district court found, there was no connection between the alleged discrimination and the decision to discharge Fernando. All of the incidents of which Fernando complained occurred three years prior to his discharge and involved physicians who were not primarily responsible for his probation and discharge. See Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1400 (7th Cir.1997). Fernando has not argued that the actions of Haber or Schwartz, who had formal authority over the decision to place him on probation, were racially discriminatory. Willis v. Marton County Auditor's Office, 118 F.3d 542, 547 (7th Cir.1997). The decision to not renew Fernando's contract was made unanimously by the entire pathology department faculty. Because there was no causal relationship between the complained-of incidents and Rush's decision to not renew Fernando's contract, the district court did not err in finding that Rush's employment decision was made on "an independent and a legally permissive basis" and any purported discrimination by doctors not involved in the decision is not relevant. Id.
 
 
 15
 Accordingly, we AFFIRM the judgment of the district court.
 
 
 
 *
 After an examination of the briefs and record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed. R.App. P. 34(a); Cir. R. 34(f)