**Mary W. JONES, Plaintiff,**

v.

**GENERAL ELECTRIC INFORMATION SERVICES, Defendant.**

Nos. 96 C 6744, 96 C 8182.

United States District Court,
N.D. Illinois,
Eastern Division.

April 27, 1998.

Mary W. Jones, Chicago, IL, pro se.

James S. Petrie, Richard H. Schnadig, Thomas Michael Wilde, Vedder, Price, Kaufman, Kammholz, Chicago, IL, for Defendant.

## OPINION AND ORDER

NORGLE, District Judge.

Before the court is Defendant's Motion for Summary Judgment. For the following reasons, the motion is granted.

## I. BACKGROUND [1]

Plaintiff, Mary W. Jones ("Jones"), has filed two separate complaints against Defen-

---

[1] The following facts are taken from the court's reconciliation of the parties Local Rule 12(M) and 12(N) statements. As provided by the rule, the court will not accept statements of facts not supported by evidence, and statements not denied by evidence are deemed admitted. *See Dil-*

dant, General Electric Information Services ("GEIS"), pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e–2000e–17, and 42 U.S.C. § 1981 based on two separate employment actions. In Jones' first complaint, filed on October 17, 1996, Jones alleges that she was demoted from her position because of her race. In Jones' second complaint, filed on December 13, 1996, Jones alleges that she was not promoted because of her race and/or in retaliation for filing a complaint with the Equal Employment Opportunity Commission ("EEOC") after her 1993 demotion. On January 10, 1997, Jones' complaints were consolidated.

On January 7, 1998, the court granted, in part, GEIS' motion for summary judgment, and held that Jones is time-barred from pursuing her § 1981 claim based on her 1993 demotion. With respect to Jones' remaining claims, however, the court took GEIS' motion under advisement, and granted Jones, a pro-se plaintiff[2], an additional opportunity to file a response brief in compliance with Local Rule 12(N). Jones filed a response to GEIS motion for summary judgment on February 25, 1998, and GEIS filed a reply on March 10, 1998. Thus, the matter is ready for disposition.

GEIS provides consulting and related services involving business-to-business electronic commerce, including Internet access, Intranet consulting, and managed network services. In December of 1985, Jones, a black female, began working at GEIS' Chicago office as a temporary receptionist. Jones reported to GEIS' Midwest Region Manager, then Barbara Cresswell ("Cresswell"), a white female. Approximately two years later, Cresswell offered, and Jones accepted, a full-time position as an Administrator Level II ("Administrator").

As an Administrator, Jones, in part, acted as an executive secretary for Cresswell. Jones was responsible for making Cresswell's travel arrangements, maintaining Cresswell's daily calendar, ordering office supplies, and arranging the logistics for seminars and sales meetings. In addition, Jones was responsible for performing clerical functions for Cresswell and the sales representatives at the Chicago office. Jones' clerical functions included typing correspondence and entering new client accounts into GEIS' computer system. Cresswell's written evaluations of Jones' performance were generally satisfactory. In 1993, Jones ceased reporting to Cresswell. Thereafter, Charles Skerya ("Skerya"), a white male, was Jones' immediate supervisor.

In approximately October 1992, Area Sales Manager, Linwood Register ("Register"), a white male began supervising the Chicago office even though he remained physically stationed in New York City. Register's supervisor informed him that the Chicago office was performing unsatisfactorily and that he was responsible for remedying the problem. Register met with Skerya, then the Chicago office's Sales Manager, along with a Technical Manager, in New York to inform them of Register's directive. Register told the Chicago office managers that they had one year to turn the Chicago office around. Register also told the managers that he intended to conduct a formal business review at the Chicago office and that they should be prepared to set forth the Chicago office's accomplishments and goals.

The formal business review took place on January 6, 1993. Skerya presented a summary and analysis of the Chicago office's performance and future plans. Skerya's business review consisted, in part, of typed

lard v. Washington, No. 95–6282, 1997 WL 305312, at *1 (N.D.Ill. May 29, 1997) (The court noted that pro-se status is no excuse for noncompliance because "the Local Rules apply to everyone, and litigants ... must undertake sufficient investigation to ensure that they comply with the procedural and substantive requirements of the Northern District of Illinois.").

**2.** The court notes that an attorney filed her appearance on behalf of Jones on April 20, 1998. However, since Jones responded to GEIS' mo-

tion for summary judgment without the assistance of counsel, the court will treat Jones as a pro-se plaintiff for purposes of this motion. See Donald v. Cook County Sheriff's Dept., 95 F.3d 548, 555 (7th Cir.1996) (quoting Palmer v. City of Decatur, 814 F.2d 426, 428–29 (7th Cir.1987)) ("Indeed it is the 'well-established duty of the trial court to ensure that the claims of a pro se litigant are given a fair and meaningful consideration.' ").

handout materials with matching transparencies. The materials were replete with typographical and other clerical errors, *e.g,* misspellings, unnumbered pages, missing texts, inconsistent usage of symbols, and misaligned columns and rows. After Skerya's presentation, sales representatives from the Chicago office had an opportunity to make their presentations; their presentation materials contained similar errors. Register thought the materials were the worst that he had ever seen in formal business reviews.

Afterwards, Register met with Skerya and expressed his disappointment with the sloppiness of the presentation materials. Skerya explained that the office Administrator, Jones, had prepared the materials from information he and others provided to her. Jones states in her affidavit that Register's Administrator electronically mailed her the format that must be used for all reviews. Skerya gave her the data to input and told her the order he wanted the slides for his presentation. Several sales representatives in the office told Register that the presentation materials were typical of Jones' quality of work.

Register consequently told Skerya that he could either move Jones out of her Administrator position or place her on a performance improvement plan ("plan"). Under the plan, a formal written plan would outline an employee's performance deficiencies and set forth the areas in which the employee must improve over a specified period of time in order to remain employed. In addition to Jones, Register directed Skerya to place three other employees in the region, Eric Gatzke ("Gatzke"), Jim Gruelich ("Gruelich"), and Kevin Hendricks ("Hendricks"), on the plan. All three employees were white sales representatives, and worked in Chicago, Cincinnati, and Milwaukee, respectively. Skerya did not move Jones out of her position or place her on the plan at that time. Gatzke and Gruelich were placed on the plan; Hendricks was terminated after the Milwaukee office was closed.

In June 1993, Register made an annual presentation to his supervisor in New York. To prepare for the presentation, Register obtained materials from all of his sales offices. Approximately one day before his presentation, Register learned that all offices provided the necessary materials, except for the Chicago office. Instead, Register received an electronic-mail message from Jones, indicating that the Chicago materials were attached; however, the materials were not attached. Register tried to contact Jones at that time to no avail. On the day of his presentation, Register finally contacted Jones and obtained the Chicago materials in time for his presentation. Although Jones does not dispute that there was a delivery problem, Jones denies all responsibility.

In August 1993, Jones typed a letter for Skerya that was sent to a new and important GEIS customer. In it, Jones misspelled GEIS' name as "GE Information Services." Twelve copies of the letter, containing the misspelled company name, were mailed, including one to Register. Register complained about the typographical error to Skerya in an August 25, 1993, memo which stated, in part, that he was "very disappointed" and that it " 'shows sloppiness and lack of concern for detail on your [Skerya's] part. This is embarrassing for you [Skerya], Chuck Kirgis, Mary Jones, and me [Register].' " (Def.'s 12(M) Stmt. at ¶ 16.) Skerya then met with Jones and informed her that Register was not happy with the staff at the Chicago office.

On September 16, 1993, Skerya met with Jones again and informed her that Register had directed him to either place Jones on a 90–day plan or to effectively demote her to a Receptionist, also referred to as Administrator Level I ("Receptionist"). Skerya told Jones that she could choose which she preferred. Jones felt that it was unfair to place her on the plan since she felt there was nothing wrong with her performance. Nonetheless, Jones chose to take the Receptionist's position because she felt that she would not make it through the plan. As a Receptionist, Jones was paid the same salary she was earning as an Administrator.

After Jones' demotion, Jones, at GEIS' direction, trained new Administrators, typically temporary contract workers, to use GEIS' software and computer systems because she had experience using them. Ky-

ron Johnson ("Johnson"), a black female, was a contract worker who temporarily replaced Jones and performed her duties as an Administrator.

On October 7, 1993, Jones filed a discrimination charge with the EEOC. In her EEOC complaint, Jones alleged that the September 16, 1993, plan/demotion option was racially motivated. Jones stated at her deposition that her EEOC charge was based on the fact that two white Administrators in the Chicago office were never similarly disciplined. However, Jones admits that those two white Administrators reported to different supervisors, and that there is no record of any performance problems for either of them.

In February 1994, Kevin Poole ("Poole") began working at the Chicago office, and became Jones' immediate supervisor in 1996. In January 1996, Poole hired Leslie Feduick ("Feduick"), a Hispanic female, as Lead Administrator because Feduick had an outstanding performance record as an Area Administrator, a high level administrative position, at GEIS' San Francisco office. Poole set Feduick's base salary based on Feduick's level of position, and her prior experience and salary. Jones denies that Poole hired Feduick solely for those reasons, and alleges that Feduick was hired to prevent Jones from obtaining that position.

Feduick was the only Administrator hired in the Chicago office between the time of Jones' 1993 demotion and December 13, 1996. Several other individuals were retained, however, from staffing agencies to perform administrator duties as temporary contract workers, *e.g.,* Johnson.

Poole knew nothing of Jones' 1993 EEOC complaint when he hired Feduick. Poole learned of the 1993 EEOC complaint when he received Jones' 1996 EEOC complaint. Jones disputes Poole's lack of knowledge because GEIS responded to Jones' 1993 EEOC complaint on February 10, 1994.

## II. DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "An issue of fact is genuine only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir.1997) (*quoting Newell v. Westinghouse Elec. Corp.,* 36 F.3d 576, 578 (7th Cir.1994)) (citation omitted).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When considering all the evidence presented in a motion for summary judgment, a court cannot make credibility determinations. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must "view the record and all reasonable inferences drawn from the record in the light most favorable to the nonmoving party." *Sample v. Aldi, Inc.,* 61 F.3d 544, 546 (7th Cir.1995).

"If the non-moving party bears the burden of proof on an issue, that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact." *Id.* at 547. "[A] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *Severn,* 129 F.3d at 427 (citations and internal quotation marks omitted). The non-moving party, therefore, will not survive summary judgment with merely a scintilla of evidence supporting its position. *See Essex v. United Parcel Serv. Inc.,* 111 F.3d 1304, 1308 (7th Cir.1997).

"The question is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Severn,* 129 F.3d at 427. Accordingly, "if the evidence presented by the parties is subject to conflicting interpretations, or if reasonable minds could differ as to its significance," summary judgment must not be granted. *O'Connor v. Chicago Trans. Auth.,* 985 F.2d 1362, 1366 (7th Cir.1993).

## A. Racial Discrimination Claims

Jones alleges that GEIS demoted her from an Administrator to a Receptionist in 1993, and that GEIS failed to promote her to Lead Administrator in 1996 because of her race. Title VII makes it an unlawful employment practice to use an employee's race as a ground for an employment decision. 42 U.S.C. § 2000e–2(a)(1). Section 1981 provides that "[a]ll persons ... shall have the same right ... to make and enforce contracts, ... as is enjoyed by white citizens." 42 U.S.C. § 1981(a).

"'Although section 1981 and Title VII differ in the types of discrimination they proscribe, the methods of proof and elements of the case are essentially identical.'" *See Hunter v. Habegger Corp.*, No. 97–2133, 1998 WL 104635, at *9 (7th Cir. March 5, 1998) (citations omitted). In proving her racial discrimination claims, Jones may establish that GEIS "had discriminatory intent either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden-shifting method known as the *McDonnell Douglas* test." *See Kormoczy v. Secretary, U.S. Dept. of HUD.*, 53 F.3d 821, 823–24 (7th Cir.1995); *see also Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 722 (7th Cir.1998); *Hunter*, 1998 WL 104635, at *9–10. "These two methods are distinct evidentiary paths." *Kormoczy*, 53 F.3d at 824.

Under the direct method, Jones may present either direct or circumstantial evidence of discrimination. *See Wallace v. SMC Pneumatics*, 103 F.3d 1394, 1397 (7th Cir.1997) (noting that a plaintiff can satisfy the direct method through either direct or circumstantial evidence). "Direct evidence is that which can be interpreted as an acknowledgment of the defendant's discriminatory intent." *Kormoczy*, 53 F.3d at 824 (*citing Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)). In other words, a plaintiff brings direct evidence when he presents a "smoking gun" of discriminatory intent. *See e.g., Bahl v. Royal Indem. Co.*, 115 F.3d 1283, 1290 n. 6 (7th Cir.1997) (discussing what constitutes direct evidence of discrimination).

"[C]ircumstantial evidence is admissible too, to provide a basis for drawing an inference of intentional discrimination." *Troupe*, 20 F.3d at 736. Circumstantial evidence under the direct method comes in three forms:

> The first consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn.... Second is evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment.... And third is evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination.

*Id.* (citations omitted). The Seventh Circuit has noted that this third type of circumstantial evidence "is substantially the same as the evidence required in a so-called indirect or *McDonnell Douglas* case...." *Huff v. UARCO, Inc.*, 122 F.3d 374, 380 (7th Cir.1997); *see also Huff v. UARCO, Inc.*, 925 F.Supp. 550, 560–61 (N.D.Ill.1996) (providing an excellent discussion recognizing that the third type of circumstantial evidence "really seems to be simply a shorthand way of describing the *McDonnell Douglas* burden shifting analysis.").

Here, Jones admits that she does not have direct or circumstantial evidence of racial discrimination and relies on the *McDonnell Douglas* burden-shifting method to oppose GEIS' motion for summary judgment. Under the *McDonnell Douglas* burden-shifting method, Jones bears the initial burden of proving a prima facie case of racial discrimination by a preponderance of the evidence. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Kennedy*, 140 F.3d at 722; *Hunter*, 1998 WL 104635, at *11. If Jones succeeds in establishing a prima facie case of discrimination, a pre-

sumption of illegality arises and the burden shifts to GEIS to articulate legitimate, non-discriminatory reasons for the challenged actions. *See Kennedy*, 140 F.3d at 722; *Hunter*, 1998 WL 104635, at *11. If GEIS satisfies this burden, Jones has the opportunity to prove by a preponderance that the non-discriminatory reasons asserted by GEIS are merely pretext for discrimination. *Id.*

"Pretext means a lie, specifically a phony reason for some action." *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 348 (7th Cir. 1997). Merely casting doubt on an employer's stated reason for its employment decision is insufficient to establish pretext. *See Weisbrot v. Medical College of Wis.*, 79 F.3d 677, 682 (7th Cir.1996). Jones must " 'produce evidence from which a rational factfinder could infer that the company lied about its proffered reasons' " for the adverse employment actions. *Id.* (citations omitted). To establish pretext, Jones may introduce evidence that demonstrates "(1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the discharge; or (3) the proffered reasons were insufficient to motivate the discharge." *Wolf v. Buss (Am.) Inc.*, 77 F.3d 914, 919 (7th Cir.1996); *see also Hunter*, 1998 WL 104635, at *12.

### 1. *1993 Demotion*

■ To establish a prima facie case of discrimination in a demotion context, Jones must show that: (1) she is a member of a protected class; (2) she met GEIS' legitimate work expectations; (3) she suffered an adverse employment action; and (4) GEIS treated similarly situated employees outside her classification more favorably. *See Kennedy*, 1998 WL 152977, at *5. Jones fails to do so.

■ Jones did not specifically address her racial discrimination claim based on the 1993 demotion in her response to GEIS' motion for summary judgment. Thus, Jones offered no evidence to establish a prima facie case or to show pretext. In fact, based on her Local Rule 12(N) statement, Jones cannot satisfy her burden.

First, Jones cannot establish a prima facie case because she did not dispute that she failed to meet GEIS' legitimate work expectations and that GEIS did not treat similarly situated employees outside her classification more favorably. In GEIS' Local Rule 12(M) statement, GEIS stated that its Area Sales Manager, Register, directed Jones' immediate supervisor, then Skerya, to either place Jones on the plan or demote her as a result of her poor performance. GEIS stated that Jones made numerous typographical and clerical errors which led to Register's decision. On September 16, 1993, Skerya met with Jones and informed her of Register's decision. Skerya told Jones that she could choose whether to be placed on the plan or to be demoted to a Receptionist. Jones chose to be demoted.

In Jones' Local Rule 12(N) statement, Jones merely asserts that she was not responsible for the typographical and clerical errors. She does not deny that the errors existed or that she was responsible for preparing the materials, containing the errors. In addition, Jones alleges that she did not have any performance deficiencies. In support of her satisfactory performance, Jones relies on her own affidavit and the affidavits of (1) Phyllis Gallichio, former Administrator; (2) Richard Panfil, former Senior Account Executive; and (3) Darlene Santarelli, former Administrator. However, neither self-serving statements, with no factual support in the record, nor statements of co-workers are sufficient to raise a genuine issue of material to defeat a motion for summary judgment. *See Fernando, M.D. v. Rush–Presbyterian–St. Luke's, Med. Ctr.*, No. 97–3157, 1998 WL 152982, at *2 (7th Cir. March 26, 1998) (self-serving statements); *Johnson v. City of Fort Wayne, Indiana*, 91 F.3d 922, 936 (7th Cir.1996) (statements of co-workers and former supervisors).

■ Furthermore, Jones argues that two similarly situated, white Administrators were not similarly disciplined. Yet Jones admits that these Administrators reported to different supervisors and that there was no record of any performance deficiencies for either of them. Because these white Administrators did not have any performance deficiencies,

they were not similarly situated to Jones. *See Williams v. General Mills, Inc.,* 926 F.Supp. 1367, 1376 (N.D.Ill.1996) (" '[A]llegedly comparable employees must have been engaged in materially similar conduct without mitigating circumstances to explain the difference in their treatment.' ") (citation omitted). Moreover, Jones admits that Register also directed Skerya to place three other employees in the region on the plan. All three employees were white sales representatives. Although Jones is correct that these employees were not similarly situated to Jones because of their titles, the court notes that it supports GEIS' assertion that employees experiencing performance deficiencies are placed on the plan, regardless of their race.

Therefore, based on the parties Local Rule 12(M) and 12(N) statements, the court concludes that Jones failed to establish the third and fourth prima facie elements. Accordingly, summary judgment in favor of GEIS is appropriate as to this claim. *See Coço v. Elmwood, Care Inc.,* 128 F.3d 1177, 1178 (7th Cir.1997) (court's analysis need not reach pretext stage where plaintiff has failed to establish a prima facie case of discrimination).

Second, even assuming that Jones can establish a prima facie case, Jones fails to show pretext. Jones points to nothing in the record to show that GEIS' explanation for the adverse employment action, poor performance, "had no basis in fact, that the explanation was not the 'real' reason, or that the reason stated was insufficient to warrant [her demotion]." *Fernando,* 1998 WL 152982, at *3. In order to show pretext, Jones must " 'squarely rebut the articulated reason for [her demotion].' " *Id.* (citation omitted). Jones fails to do so. Therefore, Jones fails to present any competent evidence to show that Register or Skerya, who had formal authority over the decision to place Jones on the plan or demote her, were racially discriminatory. Accordingly, the court grants GEIS' motion for summary judgment on this claim.

### 2. *1996 Failure–To–Promote*

■ As a preliminary matter, GEIS argues that Jones cannot assert for the first time in her response to its motion that its failure to promote Jones to the position of Lead Administrator was racially motivated. Jones' EEOC complaint merely states that it was in retaliation for filing an EEOC complaint after her 1993 demotion. Thus, the court agrees.

■ . "As a general rule, an employee who files a discrimination complaint in federal court cannot raise claims that were not included in her administrative charges." *See Benedict v. Eau Claire Public Schools,* No. 97–2513, 1998 WL 60374, at *10 (7th Cir. Feb.10, 1998). Thus, in order to raise allegations in a federal discrimination complaint, the allegations must be "like or reasonably related" to the allegations raised in the charge. *Id.*

Review of Jones' second EEOC complaint shows that Jones specifically stated that she believed she had been retaliated against for filing an earlier EEOC complaint. There is nothing in the record before the court to indicate that Jones intended the EEOC to investigate racial discrimination. *See Finley v. Illinois Dept. of Public Aid,* No. 97 C 3381, 1998 WL 26156, at *4 (N.D.Ill. Jan.12, 1998) ("However, in·determining the scope of an EEOC charge, '[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations.' ") (citation omitted). Thus, the court concludes that Jones' claim of racial discrimination based on GEIS' failure to promote Jones is not like or reasonably related to her claim for retaliation in her EEOC complaint. *See Finley,* 1998 WL 26156, at *4 ("If this court were to look only to the face of the EEOC charge, it would conclude that Finley's claim for race discrimination in his judicial complaint is not like or reasonably related to his claim for retaliation in his EEOC charge.").

■ Accordingly, summary judgment in favor of GEIS as to this claim is appropriate. *See Benedict,* 1998 WL 60374, at *10. Nonetheless, even assuming that Jones' racial discrimination claim is within the scope of her second EEOC complaint, she cannot establish a prima facie case or show pretext.

918

■ To establish a prima facie case in a failure to promote context, Jones must show that: (1) she is a member of a protected class; (2) she applied for and was qualified for the promotion sought; (3) she was rejected for the promotion; and (4) the person who was promoted had similar or lesser qualifications than her. *See Watson v. MCI Communications Corp.*, 129 F.3d 1268 (Table), 1997 WL 686226, at *2 (7th Cir. Oct. 27, 1997).

In this case, GEIS argues that Jones fails to present competent evidence to show that she was qualified for the promotion sought. Jones merely relies on the affidavits of her co-workers identified above to assert that she was qualified. As stated above, the statements of co-workers are insufficient to raise a genuine issue of material fact. *See Johnson*, 91 F.3d at 936. Further, it is undisputed that Feduick, the person promoted over Jones, had an outstanding performance record as an Area Administrator, a high level administrative position, at GEIS' San Francisco office. Jones, on the other hand, had a poor performance record as an Administrator. Thus, Jones fails to show that Feduick had similar or lesser qualifications than Feduick. As such, summary judgment in favor of GEIS as to this claim is appropriate. *See Coco*, 128 F.3d at 1178.

Even assuming that Jones can establish a prima facie case, Jones fails to show that Poole's reasons for hiring Feduick, her qualifications and outstanding performance, were merely pretextual for racial discrimination. Rather than " 'squarely rebut[ing] the articulated reason[s],' " *Fernando*, 1998 WL 152982, at *3, Jones argues that because GEIS had a policy of promoting internally, she should have been given a preference. Jones also argues that Poole hired Feduick to prevent her from receiving the promotion. However, Jones offers no evidence to support her arguments. Jones' subjective beliefs and conclusions are not enough to evidence pretext. *Id.; see also Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 401 (7th Cir.1997). Nor is it the court's " 'province to second-guess the business judgment of an employer where, as here, it acted on ample legitimate justification for [not promoting Jones].' " *Fernando*, 1998 WL 152982, at *3.

Jones fails to show that GEIS' stated reason for hiring Feduick was a pretext to racial discrimination. Therefore, Jones fails to show that Poole, who had formal authority over the decision not to promote her, was racially discriminatory. Accordingly, the court grants GEIS' motion for summary judgment as to this claim.

### B. Retaliation Claim

■ Jones also alleges that GEIS failed to promote her to Lead Administrator in 1996 in retaliation for filing a complaint with the EEOC after her 1993 demotion. Title VII makes it "an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e–3(a). Retaliation claims undergo the same burden-shifting analysis discussed above. *See Hunter*, 1998 WL 104635, at *14. To establish a prima facie case of retaliation, Jones must show: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action. *Id.* Jones fails to establish the third prima facie element.

■ Jones fails to specifically address this claim in her response to GEIS' motion for summary judgment. Further, review of the record before the court indicates no evidence to show that Jones' filing of her EEOC complaint after her 1993 demotion was causally linked to Poole's failure-to-promote Jones to the position of Lead Administrator.

Poole hired Feduick in January 1996 as Lead Administrator. After GEIS demoted Jones in 1993, Jones filed an EEOC complaint on October 7, 1993. The time lapse of more than two years between the filing of an EEOC complaint and the allegedly retaliatory action is sufficient on these facts to negate any possible inference of retaliatory motive. *See Davidson v. Midelfort Clinic, Ltd.*, 133 F.3d 499, 511 (7th Cir.1998) (cases cited therein). Hence, Jones must provide additional evidence of a causal link to establish a prima facie case. *Id.* Jones fails to do so.

To establish the third prima facie element for this claim, Jones argues that Poole had knowledge because GEIS answered her 1993 EEOC complaint in February 1994. Poole, however, did not work at the Chicago office until February 1994, and did not become a supervisor until 1996. Poole also avers that he did not know about Jones' 1993 EEOC complaint when he decided to hire Feduick. Jones does not specifically dispute that Poole, the key decision-maker, lacked any knowledge of the 1993 EEOC complaint when he decided to hire Feduick. *See, e.g., Davis v. Commonwealth Edison, Co.,* No. 94 C 7098, 1997 WL 158336, at *8 (N.D.Ill. March 31, 1997) (focusing on the individual's knowledge). Also, even assuming that Poole had the requisite knowledge, Jones still fails to show that Poole's decision to hire Feduick was causally related to Jones' 1993 EEOC complaint. Therefore, Jones fails to establish the third prima facie element, and summary judgment in favor of GEIS is appropriate. *See Coco,* 128 F.3d at 1178.

Even assuming that Jones could establish a prima facie case, Jones also fails to show pretext. As stated above, Poole hired Feduick based on her qualifications and outstanding performance at GEIS' San Francisco office. Jones does not dispute this reason, but adds that Poole also hired Feduick to prevent Jones from obtaining the position. This is not enough to show pretext. *See Fernando,* 1998 WL 152982, at *3, *Chiaramonte,* 129 F.3d at 401. Therefore, Jones fails to show that Poole, who had the formal authority to hire a Lead Administrator, had a retaliatory motive when he hired Feduick instead of Jones. Accordingly, the court grants GEIS' motion for summary judgment as to this claim as well.

## III. CONCLUSION

For the foregoing reasons, the court grants GEIS' motion for summary judgment. The case is terminated.

IT IS SO ORDERED.