# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| JEFFREY S. HILL,<br> Appellant, | DOCKET NUMBER<br> AT-0432-16-0643-I-1 |
| v. | |
| DEPARTMENT OF HOMELAND<br> SECURITY,<br> Agency. | DATE: September 14, 2022 |

# THIS ORDER IS NONPRECEDENTIAL[1]

Adam Jerome Conti, Esquire, Atlanta, Georgia, for the appellant.

Andrew Hass, Washington, D.C., for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## REMAND ORDER

¶1     The agency has filed a petition for review of the initial decision, which reversed the agency's action removing the appellant for unacceptable performance.  For the reasons discussed below, we GRANT the agency's petition for review, REVERSE the initial decision to the extent it held that the appellant's

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

performance standards were invalid, and REMAND the case to the Atlanta Regional Office for further adjudication in accordance with this Remand Order, including for the administrative judge to consider the decision of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *Santos v. National Aeronautics & Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021).

## BACKGROUND

¶2    The appellant served as a Supervisory Information Technology (IT) Specialist with the agency's Federal Emergency Management Agency. Initial Appeal File (IAF), Tab 8 at 170. In January 2015, the agency issued the appellant a performance plan for the rating period of January 1 to December 31, 2015. *Id.* at 93-129. In January 2016, the appellant's supervisor provided the appellant with his performance appraisal and rating for the 2015 rating period, in which he rated the appellant's performance as unacceptable in two of the seven core competencies of his position: Core Competency 1: Communication; and Core Competency 6: Assigning, Monitoring & Evaluating Work. *Id.* at 91. In February 2016, the appellant's supervisor issued the appellant a 60-day performance improvement plan (PIP). *Id.* at 85-89. On May 3, 2016, the appellant's supervisor notified the appellant that he had failed to achieve an acceptable level of performance, proposed the appellant's removal for unacceptable performance in Core Competencies 1 and 6, and placed the appellant in an administrative leave status. *Id.* at 44-46, 48, 50-83. The appellant provided oral and written replies to the proposed removal, as well as a supplemental written reply in response to additional information provided by the deciding official. *Id.* at 28-29, 31, 33-42. The deciding official issued a decision sustaining the proposed removal, effective July 11, 2016. *Id.* at 24-26.

¶3        The appellant timely filed a Board appeal in which he challenged the removal and requested a hearing.[2]  IAF, Tab 1.  The appellant alleged that his performance was not unsatisfactory, the PIP added new duties inconsistent with the performance standards set forth in his performance plan, his performance during the PIP was not rated in accordance with the performance standards in his performance plan, the agency committed harmful procedural error during the removal process, and the agency removed him because of his age, disabilities, and protected equal employment opportunity (EEO) activity.  *Id.* at 6.  During the prehearing conference, the appellant withdrew his affirmative defense of disability discrimination.  IAF, Tab 24 at 4.

¶4        Following a hearing, the administrative judge issued an initial decision reversing the agency's removal action.  IAF, Tab 28, Initial Decision (ID).  The administrative judge found that the agency's performance standards were not valid because they did not notify the appellant of the level of performance required to achieve acceptable performance and could be interpreted as absolute. ID at 6-10.  He also found that the agency failed to supplement the performance standards, as the tasks set forth in the PIP failed to inform the appellant of the level of performance he was required to achieve, and it was unreasonable that the appellant's failure to complete 1 of the 11 tasks in the PIP would result in unacceptable performance.  ID at 9-12.  Thus, the administrative judge held that the agency failed to establish that the appellant's performance standards were valid and reversed the removal action.  ID at 12, 17.  He also found that the

[2] On July 1, 2016, the agency provided the appellant with a draft decision sustaining the proposed removal and offered the appellant the opportunity to retire in lieu of removal if he waived his appeal rights and dismissed his pending equal employment opportunity complaint; 4 days later, the appellant declined the settlement offer and applied for retirement.  IAF, Tab 1 at 6, 9-10, 15-17; Hearing Transcript at 115-16 (testimony of the deciding official).  The appellant filed his appeal on July 7, 2016; however, the agency did not issue the decision effecting his removal until July 11, 2016.  IAF, Tab 1, Tab 4, Tab 8 at 24-26.  It is unclear whether the agency effected the appellant's retirement prior to the issuance of the decision; regardless, the appellant's retirement status has no effect on this appeal.  *See* 5 U.S.C. § 7701(j).

appellant did not prove his affirmative defenses of retaliation on the basis of protected EEO activity and discrimination on the basis of age and that he need not address the appellant's harmful procedural error and due process affirmative defenses given his reversal of the removal action.  ID at 12-17.

¶5    The agency has timely filed a petition for review of the initial decision, and the appellant has filed a response in opposition to the agency's petition.  Petition for Review (PFR) File, Tabs 1, 4.[3]  As set forth below, we find that the administrative judge erred in finding that the appellant's performance standards are not valid, and so we remand this matter for further adjudication of the merits of the removal action.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6    As discussed below, we are remanding this appeal for two reasons.  First, the administrative judge did not fully adjudicate the merits of the appeal or the appellant's affirmative defenses of harmful procedural error and due process violations after finding that the agency failed to prove that its performance standards were valid.  We are vacating the administrative judge's finding that the performance standards were not valid.  Thus, the remaining elements of a performance-based action as set forth in *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 5 (2010), as well as the above-mentioned affirmative defenses, must be adjudicated.  Second, after the issuance of the initial decision, the Federal Circuit issued its decision in *Santos*, 990 F.3d 1355.  In *Santos*, the court held for the first time that, in addition to the elements of a chapter 43 case set forth by the administrative judge and discussed below, an agency must also show that the initiation of a PIP was justified by the appellant's unacceptable

---

[3] The administrative judge ordered the agency to provide the appellant with interim relief should either party file a petition for review.  ID at 19.  On review, the agency submitted an uncontested certification stating that it has complied with the interim relief order.  PFR File, Tab 2 at 4-5.

performance before the PIP. *Id*. at 1360-63. Thus, remand is necessary for the administrative judge to address the additional requirement set forth in *Santos*.

¶7     Below, we first address the administrative judge's findings on the elements of a chapter 43 appeal as they existed at the time of the initial decision, which includes our decision to reverse the administrative judge's findings regarding the validity of the agency's performance standards and our remand instructions in that regard. We then address the additional element to be considered on remand, consistent with *Santos*. Finally, we briefly discuss the appellant's affirmative defenses of retaliation for protected EEO activity and discrimination on the basis of age, wherein we discern no basis to disturb the administrative judge's findings.

<u>The administrative judge erred in finding that the appellant's performance standards were not valid.</u>

¶8     At the time the initial decision was issued, the Board's case law stated that, in a performance-based action under 5 U.S.C. chapter 43, an agency must establish by substantial evidence that: (1) the Office of Personnel Management (OPM) approved its performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of his position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(b)(1); (4) the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to demonstrate acceptable performance; and (5) the appellant's performance remained unacceptable in one or more of the critical elements for which he was provided an opportunity to demonstrate acceptable performance. *Lee*, 115 M.S.P.R. 533, ¶ 5. Substantial evidence is the "degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree." 5 C.F.R. § 1201.4(p).

¶9     The administrative judge's findings that OPM approved the performance appraisal system utilized by the agency in this matter and that the agency

communicated to the appellant the performance standards and critical elements of his position are not in dispute, and we discern no reason to disturb these findings, as the record reflects that the administrative judge considered the evidence as a whole and drew appropriate inferences from the evidence submitted.  ID at 5-6; *see Clay v. Department of the Army*, 123 M.S.P.R. 245, ¶ 6 (2016) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on the issue of credibility); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

¶10        On review, the agency argues that the administrative judge erred in finding that the appellant's performance standards are not valid because the appellant's performance standards include qualitative benchmarks, and the language of the PIP sufficiently clarified the appellant's performance standards and communicated the minimum level of performance he was required to achieve. PFR File, Tab 1 at 7-15; ID at 6-12.  The appellant concedes that his performance standards include valid benchmarks but argues that the supplemental measures set forth in the PIP are unreasonable because they are unrelated to his performance standards, unachievable, and do not inform him of the minimum level of performance he was to achieve.  PFR File, Tab 4 at 8-12.

¶11        Performance standards must, to the maximum extent feasible, permit the accurate appraisal of performance based on objective criteria related to the job in question.   5 U.S.C. § 4302(c)(1); *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 21 (2013).   Standards must be reasonable, realistic, attainable, and clearly stated in writing.   *Towne*, 120 M.S.P.R. 239, ¶ 21. Performance standards should be specific enough to provide an employee with a firm benchmark toward which to aim his performance and must be sufficiently precise so as to invoke general consensus as to their meaning and content.  *Id.* Performance standards are not valid if they do not set forth the minimum level of

performance that an employee must achieve to avoid removal for unacceptable performance under chapter 43. *Id.*

¶12     The administrative judge found that the appellant's performance standards, as set forth in Core Competencies 1 and 6, were not valid because they lacked qualitative or quantitative benchmarks for "how well and how often" the appellant had to meet the standards. ID at 8-9. The fact that performance standards may call for a certain amount of subjective judgment on the part of the appellant's supervisor does not automatically render them invalid, especially when, as here, the appellant's position involves the type of professional judgment that is not susceptible to a mechanical rating system. *Neal v. Defense Logistics Agency*, 72 M.S.P.R. 158, 162 (1996); *see Wilson v. Department of Health & Human Services*, 770 F.2d 1048, 1055-56 (Fed. Cir. 1985) (recognizing that "some tasks may be rated only with a certain modicum of subjective judgment"). Here, the appellant served as the Branch Chief of the regional IT division, supervising approximately 14 employees, and both the technical and supervisory nature of his work called for a degree of independence and discretion that warranted less objectivity and specificity in his performance standards. Hearing Transcript (HT) at 129-31 (testimony of the appellant); *see Greer v. Department of the Army*, 79 M.S.P.R. 477, 483 (1998) ("[W]ith greater discretion and independence reposed in the incumbent of a position comes less objectivity and specificity in the position's performance standards.").

¶13     Contrary to the administrative judge's findings, we find that any lack of specificity in the appellant's performance standards was cured when the agency gave content to the performance standards by providing the appellant with supplemental standards in the PIP and providing oral and written feedback during the period in which the PIP was in effect. ID at 9-12. An agency may give content to performance standards by informing the appellant of specific work requirements through written instructions, information concerning deficiencies and methods of improving performance, memoranda describing unacceptable

performance, and responses to the appellant's questions concerning performance. *Romero v. Equal Employment Opportunity Commission*, 55 M.S.P.R. 527, 535 (1992), *aff'd*, 22 F.3d 1104 (Fed. Cir. 1994) (Table). In particular, the PIP informed the appellant of his performance deficiencies under each core competency at issue and outlined seven "improvement actions" under Core Competency 1 and four such actions under Core Competency 6 that he was to complete during the period in which the PIP was in effect to perform at an acceptable level. IAF, Tab 8 at 86-88.

¶14 The administrative judge found that the agency failed to set forth the minimum level of performance that the appellant was required to meet because the actions set forth in the PIP did not include performance measures and did not inform the appellant of the minimum level of performance that he was required to meet to achieve acceptable performance. ID at 9-12. To the contrary, we find that each improvement action set forth in the PIP set forth sufficient benchmarks toward which the appellant was to aim his performance. Each action identified a communication or written product that the appellant was to complete during the period in which the PIP was in effect. IAF, Tab 8 at 87-88. Each action further identified required content for each communication or written product. *Id.* Although the appellant disputed the validity of two actions under Core Competency 1, which required him to submit a "completed" written product, we find that this descriptor, coupled with his performance standard, which required him to submit communications that "rarely require revisions," was sufficient to communicate to him the minimum level of quality his written products under these actions were to achieve. *Id.* at 86-87; *see also Wilson*, 770 F.2d at 1055 (concluding that a performance standard providing that reports must require "minimum revisions" was sufficiently objective and precise, despite allowing for some subjective judgment on the part of the appellant's evaluators). Each improvement action also set forth either the frequency by which the appellant was to complete a discrete action, such as "every two weeks" during the period in

which the PIP was in effect, or a firm deadline to complete such an action. IAF, Tab 8 at 87-88. Thus, we find that the appellant's performance standards, as clarified by the improvement actions set forth in the PIP, were sufficiently precise so as to invoke general consensus as to their meaning and content.

¶15   The administrative judge's finding that the agency did not inform the appellant that failure to complete 1 of the 11 actions set forth in the PIP would result in unacceptable performance is unsupported by the language in the PIP itself. ID at 9-10. The PIP informed the appellant that, by the end of the designated performance improvement period, "your performance must improve to a level of 'Achieved Expectations' in each element for which you are currently rated as 'Unacceptable'" and that failure to do so would result in a performance-based action, such as removal. IAF, Tab 8 at 86. Following a description of the appellant's performance standards at the "Achieved Expectations" level, the appellant's performance deficiencies, and "Improvement Actions to Achieve Expectations" that the appellant was to complete, the PIP informed the appellant that "All improvement actions required for 'Achieved Expectations' in your unacceptable critical elements are listed above under the heading 'Improvement Actions to Achieve Expectations.'" *Id.* at 86-88. Thus, we find that the language in the PIP was sufficiently clear to notify the appellant that completing the 11 improvement actions set forth in the PIP was required to demonstrate performance at the "Achieved Expectations," or acceptable, level.

¶16   The administrative judge's finding that the improvement actions were merely a list of tasks that the appellant was required to perform in addition to his normal duties, and were thus unreasonable, is unsupported by the record. ID at 10-12. The 11 actions the appellant was to complete during the PIP "neither materially changed the performance standard expected nor posed any additional burdens on the appellant," *Anthony v. Department of the Army*, 27 M.S.P.R. 271, 273 n.* (1985), *aff'd*, 795 F.2d 1011 (Fed. Cir. 1986) (Table), but rather fleshed out the appellant's overall performance objectives and constituted valid

clarifications that provided him a firm benchmark toward which to aim his performance, *Towne*, 120 M.S.P.R. 239, ¶¶ 21-23. The record reflects that the actions identified firm deadlines and specific content for projects for which the appellant was responsible prior to the implementation of the PIP and for communications required of the appellant in the normal course of his supervisory and management duties as Branch Chief. IAF, Tab 8 at 86-88, 130-33; Tab 16 at 31-34; HT at 9-10, 12-18 (testimony of the acting IT division branch chief), 75-78 (testimony of the proposing official). It was well within the agency's discretion to establish deadlines and other requirements to give content to the appellant's performance standards. *See Towne*, 120 M.S.P.R. 239, ¶ 23 (concluding that standards set forth in the appellant's PIP sufficiently fleshed out a performance standard regarding timeliness); *Chaggaris v. General Services Administration*, 49 M.S.P.R. 249, 254-55 (1991) (finding that the appellant's performance standards were valid when, among other things, he received a document giving him clear written instructions for each project, the results expected, due dates, and required follow-ups). Moreover, timely performance is either directly or inherently required in the appellant's performance standards. Under Core Competency 6, the appellant's performance standards required him to "timely" monitor and evaluate team members' performance, address performance problems, address conduct issues, and provide feedback to unit members. IAF, Tab 8 at 87. As to Core Competency 1, which required the appellant to prepare "effective" communications, the appellant's supervisor testified that the ability to effectively communicate was related to the ability to timely communicate. HT at 100 (testimony of the proposing official). Thus, we find the actions and time limits set forth in the PIP to constitute valid clarifications of the appellant's performance standards.

¶17 Finally, the administrative judge's finding that it was unreasonable that the appellant's failure to complete 1 of the 11 improvement actions would result in unacceptable performance lacks explanation or evidentiary support. ID at 9-10.

An absolute performance standard is one under which a single incident of poor performance will result in an unsatisfactory rating on a critical element. *Guillebeau v. Department of the Navy*, 93 M.S.P.R. 379, ¶ 10 (2003), *aff'd*, 362 F.3d 1329 (Fed. Cir. 2004). Although agencies are not barred from implementing absolute performance standards, performance standards must nevertheless be "reasonable, based on objective criteria, and communicated to the employee in advance." *Guillebeau*, 362 F.3d at 1337. Thus, an agency is free to set its performance standards as high as it deems appropriate, so long as those standards are objective and meet the other express requirements of 5 U.S.C. § 4302(c)(1). *Jackson v. Department of Veterans Affairs*, 97 M.S.P.R. 13, ¶ 14 (2004).

¶18     The agency has demonstrated by substantial evidence that the 11 improvement actions, standing alone or together, do not require an unreasonably high level of performance by the appellant. None of the improvement actions on their face require an unreasonably high level of performance. IAF, Tab 8 at 87-88. The appellant did not explain why completing the 11 actions was unattainable except to argue that some of the action deadlines were too close together (but he did not offer support for this claim) and that he could not perform the actions in addition to his regular duties and his duties during the reorganization of his division. HT at 141-44, 148-49 (testimony of the appellant). Although the appellant's arguments regarding his ability to complete all 11 actions during the PIP period due to his need to complete other work may be relevant to the issue of whether he was provided with a reasonable opportunity to improve his performance to an acceptable level during the PIP period, there is no evidence that the 11 improvement actions themselves required an unreasonably high level of performance. *Compare Hober v. Department of the Army*, 64 M.S.P.R. 129, 132 (1994) (holding that, when a performance standard required the appellant to coordinate and compile an annual report by the "suspense date," and his actual ability to render acceptable performance under the standard was not

in dispute, the standard itself did not require an unreasonably high level of performance), *with Blain v. Veterans Administration*, [36 M.S.P.R. 322](), 324-25 (1988) (finding that a performance standard that required a file clerk to achieve a 99.91% accuracy rate in pulling and returning medical records from files was unreasonable and thus invalid).

¶19     Accordingly, we find that the agency's performance standards were not impermissibly vague and reverse the administrative judge's finding that the performance standards were invalid. Upon finding that the performance standards were invalid, the administrative judge did not further adjudicate the full merits of the appeal as they existed at the time of the initial decision, nor did he reach the issue of whether the appellant proved that the agency committed due process violations or harmful procedural error. ID at 12, 16-17. Further findings regarding the merits and the appellant's remaining affirmative defenses are best made by the initial finder of fact; thus, we remand the case for further adjudication of the agency's removal action. *See Neal*, 72 M.S.P.R. at 163.

¶20     On remand, the administrative judge shall make findings, based on the evidence already in the record, as to whether the agency established by substantial evidence that the agency warned the appellant of the inadequacies of his performance during the appraisal period and gave him a reasonable opportunity to demonstrate acceptable performance, and whether the appellant's performance remained unacceptable in one or more of the critical elements for which he was provided an opportunity to demonstrate acceptable performance. *See Lee*, [115 M.S.P.R. 533](), ¶ 5. The administrative judge also shall make findings, based on the evidence already in the record, as to whether the appellant proved his affirmative defenses of due process violations and harmful procedural error.

Remand is also required under *Santos*.

¶21     In addition to remanding the appeal for the administrative judge to consider the remaining elements of a chapter 43 performance-based action, as set forth

above, we must also remand this appeal in accordance with *Santos*. As noted, during the pendency of the petition for review in this case, the Federal Circuit held in *Santos*, 990 F.3d at 1360-61, that, in addition to the five elements of the agency's case set forth above, the agency must also justify the institution of a PIP by proving by substantial evidence that the employee's performance was unacceptable prior to the PIP. The Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place. *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16. Thus, we remand the appeal to give the parties the opportunity to present argument and additional evidence on whether the appellant's performance during the period leading up to the PIP was unacceptable in one or more critical elements. *See id.*, ¶¶ 15-17. On remand, the administrative judge shall accept argument and evidence on this issue and shall hold a supplemental hearing, limited to this issue, if appropriate. *Id.*, ¶ 17.

¶22 The administrative judge shall then issue a new initial decision consistent with *Santos*. *See id.* If the agency makes the additional showing required under *Santos* on remand that the appellant's performance in Core Competency 1 and/or Core Competency 6 was at an unacceptable level prior to his placement on the PIP, and if the administrative judge also finds that the agency proved all the other elements as they existed pre-*Santos*, he may incorporate his prior findings regarding OPM's approval of the agency's performance appraisal system and the agency's communication of the performance standards to the appellant in the remand initial decision. He may also incorporate his prior findings on the appellant's affirmative defense of retaliation for protected EEO activity and discrimination on the basis of age, as discussed below, in the remand initial decision. Regardless of whether the agency meets its burden, if the argument or evidence on remand regarding the appellant's pre-PIP performance affects the administrative judge's analysis of the appellant's affirmative defenses, he should address such argument or evidence in the remand initial decision. *See Spithaler*

*v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980) (explaining that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests).

The administrative judge properly found that the appellant did not prove his affirmative defenses of retaliation for protected EEO activity and discrimination on the basis of age.

¶23    On review, the appellant has not disputed the administrative judge's findings that neither retaliation for the appellant's participation in protected EEO activity, nor discrimination on the basis of age, was a motivating factor in the agency's decision to remove the appellant. ID at 13-16. In so finding, the administrative judge applied the evidentiary standards set forth in *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶¶ 42-43, 51 (2015), *clarified on other grounds by Gardner v. Department of Veterans Affairs*, 123 M.S.P.R. 647, ¶¶ 30-31 (2016). ID at 13-14. In *Savage*, the Board stated that, when an appellant asserts an affirmative defense of discrimination or retaliation, the Board first will inquire whether the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Savage*, 122 M.S.P.R. 612, ¶ 51. The Board further stated that, in making his initial showing, an appellant may rely on direct evidence or any of the three types of circumstantial evidence described in *Troupe v. May Department Stores Co.*, 20 F.3d 734 (7th Cir. 1994), i.e., pretext, comparator or "convincing mosaic," either alone or in combination. *Savage*, 122 M.S.P.R. 612, ¶ 51.

¶24    The Board has since clarified that *Savage* does not require administrative judges to separate "direct" from "indirect" evidence and to proceed as if such evidence were subject to different legal standards, or to require appellants to demonstrate a "convincing mosaic" of discrimination or retaliation. *Gardner*, 123 M.S.P.R. 647, ¶ 29 (quoting *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760,

764 (7th Cir. 2016)). Instead, as the Board stated in *Savage*, the dispositive inquiry is whether the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Gardner*, 123 M.S.P.R. 647, ¶ 30; *see Savage*, 122 M.S.P.R. 612, ¶ 51. Here, the administrative judge discussed the distinction between direct and circumstantial evidence, but there is no indication that he disregarded any evidence because it was not direct or circumstantial, and we conclude that he properly considered the evidence as a whole in finding that the appellant failed to prove by preponderant evidence that retaliation or discrimination was a motivating factor in the removal action. ID at 13-16. As such, we discern no basis upon which to disturb the administrative judge's findings denying the appellant's affirmative defenses of retaliation and discrimination. *See Clay*, 123 M.S.P.R. 245, ¶ 6.

¶25    Nevertheless, as explained above, we recognize that the additional evidence and argument taken on remand in light of *Santos* could have an impact on the appellant's discrimination and retaliation claims.[4] Thus, if, upon receiving evidence and argument on the issue of whether the appellant's performance was at an unacceptable level prior to his placement on the PIP, the administrative judge is led to believe that discrimination or retaliation tainted the agency's decision to place the appellant on a PIP or now views other evidence in the appellant's discrimination and retaliation claims in a new light, he should explain those findings in the new initial decision.

_____

[4] On August 29, 2022, the appellant filed a motion to reopen the record to submit an August 9, 2022 decision from the Equal Employment Opportunity Commission (EEOC) regarding the discrimination claim at issue in this appeal. PFR File, Tab 8 at 4-5. In his motion, he asserts that the EEOC's decision "contains legal findings" regarding the appellant's performance rating prior to his placement on the PIP and the subsequent placement on the PIP. *Id.* We need not rule on the appellant's motion at this time. However, because this document purports to concern the issue of pre-PIP performance as discussed in *Santos* and which forms one of the bases of this remand, the administrative judge should accept the EEOC decision into the record on remand and give it the evidentiary weight he deems appropriate.

**ORDER**

¶26    For the reasons discussed above, we remand this case to the Atlanta Regional Office for further adjudication in accordance with this Remand Order.


FOR THE BOARD:                    /s/ for
                                 _____
                                 Jennifer Everling
                                 Acting Clerk of the Board
Washington, D.C.